The People *ex rel.* Cooney, State's Attorney,

*v.*

The City of Peoria.

*Filed at Ottawa May 11, 1897.*

1. Quo warranto—*lies to determine right of city to exercise corporate powers.* Quo warranto is the only remedy to determine the right of a city to exercise corporate authority over persons and property alleged to be without its territorial jurisdiction, where the contest involves the investigation of facts not appearing of record.

2. Same—*information should be against corporation in its corporate name, if corporate existence is not questioned.* An information in the nature of *quo warranto* to determine the legality of the acts of a corporation should be in the name of the corporation, if its corporate existence is not questioned.

3. Same—*legality of corporation's action is not admitted by filing information in its corporate name.* An information in *quo warranto* against a city, in its corporate name, to determine the legality of annexation proceedings, while it admits the legal existence of the corporation does not admit the legality of the annexation.

4. Same—*corporation justifying to an information in quo warranto has the entire onus.* A defendant justifying to an information in *quo warranto*, whether an individual or a corporation, has the entire burden of showing by what authority the powers complained of are exercised, and the People are entitled to a judgment of ouster if a *prima facie* case is not made out.

5. Evidence—*when city council's finding of facts is not conclusive.* Proof of the city council's finding of facts constituting the statutory conditions under which the city exercised the power of annexation, together with proof of the ordinance reciting such facts, does not make out a *prima facie* case in *quo warranto* proceedings.

Appeal from the Circuit Court of Peoria county; the Hon. T. M. Shaw, Judge, presiding.

R. J. Cooney, State's Attorney, (Dan F. Raum, and W. T. Whiting, of counsel,) for appellant:

A city, under a plea of justification alleging annexation, must show by affirmative evidence, other than the petition and the procedings of the city council, that such petition was signed by three-fourths of the legal voters and by three-fourths (in value) of the property owners

within the territory. *Kemp* v. *People*, 141 Ill. 9; *Clark* v. *People*, 15 id. 213; *Carrico* v. *People*, 123 id. 198.

The only mode in which the legality of the exercise of the governmental functions and franchises of a municipal corporation can be questioned is by *quo warranto*. Any other manner would be a collateral proceeding. *Trumbo* v. *People*, 75 Ill. 561; *Alderman* v. *School Directors*, 91 id. 179; *Osborn* v. *People*, 103 id. 226.

When an existing corporation usurps franchises which do not legally belong to it, the information should be against the corporation as such. This rule applies to municipal corporations as well as to private corporations. *People* v. *Spring Valley*, 129 Ill. 169; *Chicago* v. *People*, 80 id. 496.

W. T. IRWIN, City Attorney, for appellee:

The bringing of suit against a city in its corporate capacity is an admission of the corporate existence of the city, and of its right to exercise all the functions incident to such corporation. *People* v. *Spring Valley*, 129 Ill. 169.

To properly determine the legality of annexation proceedings, the information should have been against the officials of the city, to inquire by what authority they exercised the jurisdiction and rights complained of in the territory in controversy. *People* v. *Jones*, 137 Ill. 35; *Bodman* v. *Trustees*, 132 id. 439; *Stultz* v. *State*, 65 Ind. 492.

The finding and determination of the city as to the sufficiency of petitions of property owners is final and binding upon all parties in the absence of fraud. *Tibbetts* v. *Railway Co.* 54 Ill. App. 180; 153 Ill. 147; *Railway Co.* v. *Cheetham*, 58 Ill. App. 318.

The action of the city council as to the sufficiency of the petition for annexation is conclusive on all parties, in the absence of fraud. *People* v. *Rochester*, 21 Ill. App. 656; *Town of Coloma* v. *Eaves*, 92 U. S. 484; *Stultz* v. *State*, 65 Ind. 492.

Mr. JUSTICE CARTER delivered the opinion of the court:

On September 24, 1895, the State's attorney of Peoria county, on behalf of the People of the State, filed an information in the nature of *quo warranto* in the circuit court of Peoria county, against the city of Peoria, alleging that said city, for twenty months and more prior to the filing of said information, had exercised, without any warrant, charter, grant or authority of law whatsoever, the governmental functions and franchises of a legally authorized and constituted city in levying and collecting taxes, and also other municipal powers and authority under the statutes of Illinois, in, upon and over the inhabitants and property of certain territory alleged to be without the territorial jurisdiction of said city.   It is further alleged in said petition that said territory was never legally annexed to said city, for the reason that said city failed to comply with the prerequisite conditions required by law.   The petition prayed that said city answer by what warrant or authority it exercises municipal authority, functions and governmental powers over the inhabitants and territory described in the information.

The territory which the city of Peoria attempted to annex is described as follows:   "Beginning at the intersection lines of Adams street and Western avenue; thence north along the center line of Western avenue, which is also line between sections 17 and 18, township 8, north, range 8, east of the fourth principal meridian, to its intersection with the center line of Lincoln avenue, which point of intersection is the north-east corner of section 18; thence west along the center line of Lincoln avenue, which is the line between sections 7 and 18, to the intersection with the west line of the east half of the east half of section 18; thence south along said line to its intersection with the center line of Grinnell street; thence east along the center line of Grinnell street to its intersection with the center line of Adams street; thence

northeasterly along the center line of Adams street to the place of beginning,—all in the county of Peoria and State of Illinois, contiguous to the said city of Peoria." The territory is known as "No Man's Land," because it lies between the village of South Peoria and the city of Peoria.

The city of Peoria filed a general demurrer to the information, which was overruled by the court below, and the city then filed its plea, setting up in justification a petition of some of the residents and inhabitants of the territory in controversy for the appointment of a committee of the city council to confer with a like committee of the inhabitants of such territory in regard to annexing the said territory known as "No Man's Land" to the city of Peoria. The plea also set up the action of the city council showing the appointment of a special committee to confer with the citizens of said territory on annexation; a petition to the city council, which it is alleged was signed by more than three-fourths of the legal voters and more than three-fourths of the owners (in value) of the property within the territory proposed to be annexed, praying that the same be annexed to and as a part of the city of Peoria; the proceedings of the city council of date November 21, 1893, showing the report of the special committee of the city council upon the aforesaid petition, finding that more than three-fourths of all the legal voters and the owners of more than three-fourths (in value) of the property in said territory have petitioned for annexation, that all the legal requirements had been met, and recommending the passage of an ordinance annexing said territory; the action of the city council of date November 21, 1893, showing the adoption of an ordinance reciting that more than three-fourths of all the legal voters and the owners of more than three-fourths (in value) of the property in the said territory had petitioned in writing, as provided by law, to annex the same, and annexing the said territory to and as a part of the

city of Peoria; the certificates of filing a duly certified copy of said ordinance, together with an accurate map of the territory annexed, with the recorder of deeds of the county of Peoria, together with the certificates of the mayor and clerk of the city of Peoria, and that by that warrant and authority the defendant had exercised the franchises complained of.

To this plea the People replied that the said petition to the city council was not signed by three-fourths of the legal voters residing within the territory therein described. The city of Peoria demurred to this replication, which demurrer was overruled by the court and issue joined, and the case was tried before a jury. The city, to maintain the issue, introduced in evidence the various proceedings as set forth in their plea, and then rested. The People then moved the court to exclude the evidence offered and to instruct the jury to find the city of Peoria guilty, which motion was overruled. The People then proceeded with the trial, and offered a number of witnesses on their behalf to show that the petition for annexation did not contain the signatures of three-fourths of the legal voters residing in the territory to be annexed, which is the only disputed question of fact. The jury returned a verdict of not guilty, upon which judgment was entered in favor of the city, and the People have appealed to this court.

A question is raised as to whether *quo warranto* against the corporation is the proper remedy. A full discussion of the question as to the proper remedy in cases of this sort may be found in *Commissioners* v. *Griffin*, 134 Ill. 330, where it is said (p. 334): "Nor do we perceive any good reason why a municipal body which has exceeded its jurisdiction and has proceeded illegally may not, on sound legal principles, be proceeded against by *quo warranto*, by *scire facias* or by the common law writ of *certiorari*, indifferently, as the one or the other may afford a proper and sufficient remedy. All of these several writs are direct

remedies afforded by the law, and in respect to neither of them can it be said that it is a collateral attack upon the legal existence or organization of the corporation." That *certiorari* would not be proper in this case is fully shown by the following from the same case (p. 340): "Undoubtedly, where the controversy involves the investigation of facts not appearing upon the record, *certiorari* is not the proper remedy. Thus, if in the present case the right to have the proceedings, by which the lands in question were annexed to the drainage district, set aside and the drainage commissioners ousted of the corporate authority they now claim to exercise over said lands depended upon facts which could be established only by evidence *dehors* the record, the writ of *certiorari* would manifestly be of no avail. It may be admitted that in such case *quo warranto* would be the exclusive remedy."

It is contended that the information should have been against the officers of the city, and not against the corporation itself. In this case, however, the existence of the corporation is not questioned, but only the legality of its attempt to annex the territory in controversy. The corporation as such, in its corporate capacity, attempted to make this annexation. The annexation ordinance begins, "Be it ordained by the city council of the city of Peoria," in strict conformity with the provisions of the statute. (Chap. 24, art. 5, sec. 2.) Upon the passage of the ordinance the officers of the city proceeded to exercise such powers in the portion so annexed as were by law conferred upon them. If the annexation was legally accomplished they were justified in the exercise of those powers. In order to determine this contention a reference to our statute will be necessary.

The statute on *quo warranto* provides in section 1: "In case any person shall usurp, intrude into or unlawfully hold or execute any office or franchise, or any office in any corporation created by authority of this State, * * * or any public officer shall have done or suffered any act

.which, by the provisions of law, works a forfeiture of his office, or any association or number of persons shall act within this State as a corporation without being legally incorporated, or any corporation does or omits any act which amounts to a surrender or forfeiture of its rights and privileges as a corporation, *or exercises powers not conferred by law*, * * * the Attorney General or State's attorney," etc.    (Hurd's Stat. p. 1027.)

By the terms of the statute *quo warranto* lies only against a person who "shall usurp, intrude into or unlawfully hold or execute any office or franchise," or against any public officer who "shall have done or suffered any act which, by the provisions of law, works a forfeiture of his office."    The acts of the city officers of Peoria do not fall within any of these categories.    It is not charged, nor can it be said, that they are usurping, intruding into or unlawfully holding or executing any office or franchise, nor that they have done or suffered any act which would work a forfeiture of their offices.    Even if it could be said in this case that they were exercising powers not conferred by law, still, according to the statute, the action should be against the corporation for such an act,— and that is just what is charged against the city in this proceeding, namely, that it "does now exercise, without warrant, charter, grant, right or authority of law, the governmental franchises of a legally authorized and constituted city * * * over the inhabitants and property" of the territory in controversy.    It was therefore proper to proceed against the corporation as such.

This also disposes of the contention that by filing the information against the city not only its corporate capacity was admitted, but that it was also an admission that the territory in controversy was properly incorporated as a part of the city.    An information in the nature of a *quo warranto* against a corporation admits the existence of the corporation.    (*People* v. *City of Spring Valley*, 129 Ill. 169.)    It was said in that case (p. 175): "When

an existing corporation abuses any of its franchises or usurps franchises which do not belong to it, the information should be against the corporation as such. But when a body of men or a number of individuals unlawfully assume to be a corporation, the information should be against them as individuals, and not by their corporate name. Dillon, in his work on Municipal Corporations, (vol. 2,—3d ed.—sec. 895,) says: 'It is held in England, that if the information be for usurping a franchise by a corporation it should be *against the corporation,* but if for usurping the franchise to be a corporation it should be *against the particular persons* guilty of the usurpation.'— (*People* v. *Richardson,* 4 Cow. 97; *People* v. *R. & S. R. R. Co.* 15 Wend. 113; *People* v. *Supervisors,* 41 Mich. 647; *State* v. *Cincinnati Gas Light and Coke Co.* 18 Ohio St. 262.)" And again, on page 176: "If, in the present case, the information had charged the city of Spring Valley with exercising a franchise not authorized by its charter, it would have been proper to make the city a party defendant by its corporate name. But as the information calls in question the corporate existence of the city, it should have been brought against the officials or individuals assuming to exercise the corporate powers." And again, on page 177: "This language implies that, where the legal existence of the corporation itself is questioned, the proper defendants to the information are the *persons* who assume to act as a corporation. The subsequent clauses indicate that the corporation itself is a proper defendant when it 'does or omits any act which amounts to a surrender or forfeiture of its rights and privileges as a corporation or exercises powers not conferred by law.'"

As this proceeding could only be brought against the city in its corporate capacity, it follows that thereby the legality of the annexation cannot be admitted. (See, also, *Commissioners* v. *Griffin, supra.*) The Indiana cases are not applicable in Illinois, as the courts in that State, following the doctrine announced in *City of Peru* v. *Bearss,* 55

Ind. 576, hold that a bill for an injunction restraining the municipality from levying or collecting any taxes on such lands alleged to have been illegally annexed is the proper remedy. As we have seen, this court is committed to the contrary doctrine.

The next question that arises on this record is whether the city, by the introduction of the proceedings terminating in the alleged annexation, had made out such a *prima facie* case under its plea of justification that if no evidence had been introduced by the People it would have been entitled to judgment. It is contended by the appellant that the court erred in not giving the instruction asked by the People to find the defendant guilty, and in refusing to instruct the jury that the burden of proof was upon the city to prove its plea, and in instructing them that the burden of proof was on the People to overcome the *prima facie* case made by the city by the documentary evidence introduced. It is urged by the appellee that the finding of the city council of Peoria that the petition for annexation had been signed by more than three-fourths of the legal voters in the territory sought to be annexed was a *quasi* judicial proceeding, and was *prima facie* sufficient to maintain the issues on its behalf, without any further proof that the signers of the petition were really and actually legal voters of the territory and constituted three-fourths of such legal voters in number.

*Kamp* v. *People*, 141 Ill. 9, was a proceeding by *quo warranto* to determine the validity of the incorporation of a village under the general law. As will be seen by reference to the brief of appellants in that case, (p. 11,) it was there urged that "the records and petition import verity and cannot be impeached or contradicted, and their recitals, whether true or not, must be settled by reference to them alone; they were records required by law to be made and kept." But this court, after quoting the provisions of the statute in relation thereto, said (p. 15): "It will be seen that the calling of the election to determine

whether the territory shall be organized, the holding of
that election, the declaring its result, and the declaring
of the organization of the village pursuant to the result
of the election, all presuppose that there is at least a
population of three hundred inhabitants residing on the
territory to be organized, that the county judge is not
required to find what the fact is in that respect, that no
tribunal or mode of ascertaining what the fact is, in that
respect, is provided by statute, and that the statute does
not make the petition conclusive evidence of the truth of
the facts therein alleged. It is therefore impossible that
anybody can be concluded by the recitals of the petition
on this question.   *   *   *   It was incumbent on appel-
lants, here, to justify, and in doing so it was necessary
to state particularly the organization of the village, and
this could not be done without stating the existence of
the jurisdictional fact,—the residence of the requisite
number of inhabitants upon the territory to be organized,
—which gave the right to file the petition for organiza-
tion. The People were not bound to show anything.
(*Clark* v. *People,* 15 Ill. 213; *Carrico* v. *People ex rel.* 123 id.
198.) The failure of appellants to set up the fact of the
residence of the requisite number of inhabitants can upon
no principle excuse them, in this proceeding, from prov-
ing that fact, for without such proof they do not justify."

As said in *Whittaker* v. *Village of Venice,* 150 Ill. 195, there
is no provision of the statute for a hearing by the voters
and owners of land in the territory to be annexed who
did not sign the petition, to determine whether the stat-
ute had been complied with or not. As a prerequisite
to the passage of the ordinance annexing the territory,
the city council was authorized to ascertain the facts
which constituted the statutory conditions upon which it
could exercise the power, but their finding of such facts
and recital of them in the ordinance are not evidence of
their truth, when the corporation is called upon by the
State itself to answer by what authority it has assumed

jurisdiction over the territory in question. To so hold would be tantamount to holding that it was justified in annexing the territory because it had concluded that the conditions existed under which it had the lawful right to annex it, and had annexed it,—in other words, that the city was justified in annexing the territory because it had itself so decided. In justifying, it was incumbent on the corporation to show its title specifically. The burden was on the city. The People were bound to show nothing. (*Clark* v. *People*, 15 Ill. 213; *Carrico* v. *People ex rel.* 123 id. 198.) As said in *People ex rel.* v. *Ridgley*, 21 Ill. 64, in relation to an incumbent of an office (p. 67): "The entire *onus* is on the defendant, and he must show by his plea, and prove, that he has a valid title to the office. He must set out by what warrant he exercises the functions of the office, and must show good authority for so doing, or the People will be entitled to judgment of ouster." The rule is the same where the proceeding is against a corporation. In the case at bar the city, among other things, alleged that the petition was signed by three-fourths of the legal voters and by three-fourths of the owners (in value) of the property within the territory annexed, and the burden was upon the corporation to prove that averment. It could not sufficiently do this by giving in evidence only its own findings and conclusions on that issue. It failed to make a *prima facie* case, and the court should have so instructed the jury.

Other questions raised are sufficiently disposed of by what has already been said.

The judgment is reversed and the cause remanded for another trial.                    *Reversed and remanded.*