THE PEOPLE *ex rel.* A. Croft *et al.* Appellants, *vs.* G. W. KARR *et al.* Appellees.

*Opinion filed February 16, 1910—Rehearing denied April 8, 1910.*

1. QUO WARRANTO—*defendant must disclaim or justify.* In a proceeding by an information in the nature of *quo warranto* the defendant must either disclaim or justify, and if he justifies he must set out his title specifically and must show on the face of the plea that he has a valid title to the office.

2. SAME—*effect where a replication is filed after demurrer to plea of justification is overruled.* Filing a replication to a plea of justification after a demurrer has been overruled admits the sufficiency of the plea, in law, to bar a recovery, but it does not prevent the making of issues of fact upon the allegations of the plea, and if the allegation of the plea that the county court had jurisdiction of the subject matter is denied and the record of the county court,—the only evidence offered,—does not show such jurisdiction, judgment should be for the relator.

3. DRAINAGE—*purpose of Farm Drainage act—effect of section 76.* The main purpose of the Farm Drainage act is to permit the organization of drainage districts on petition of a majority of the property owners owning one-third of the lands or of one-third of the property owners owning a majority of the lands, and section 76 of that act is not intended to defeat such main purpose.

4. SAME—*what lands may be included in district organized under section 76 of the Farm Drainage act.* Under section 76 of the Farm Drainage act, where owners of lands have constructed a ditch and refuse to keep it in repair a proceeding may be begun to organize a district which will include such lands and lands connected with said ditch or its branches by voluntary action of the

land owners, but unconnected lands cannot be included merely because the surface drainage thereof is toward the common outlet.

5. SAME—*what must be shown by petition to organize district under section 76.* A petition to organize a district under section 76 of the Farm Drainage act should, by specific words or reference to a map, set out the description of the ditch and its branches and of the lands proposed to be included in the district, so that it can be ascertained from the petition whether the ditch and its branches are continuous and connect with the lands proposed to be included and whether they are in one or more towns.

6. APPEALS AND ERRORS—*when sufficiency of evidence to sustain plea is presented on appeal.* The question of the sufficiency of the evidence to sustain a plea of justification in *quo warranto* is presented for consideration, on appeal, where the evidence was objected to when offered and a motion made at the close of the hearing to exclude the evidence and find the defendants guilty.

7. ESTOPPEL—*People not estopped by acts of relators to question organization of drainage district.* Where there is nothing to show that an information in the nature of *quo warranto* questioning the legality of the organization of a drainage district is filed for the exclusive benefit of the relators, neither lapse of time nor the conduct of the relators will operate as an estoppel against the right of the People to prosecute such information.

APPEAL from the Circuit Court of Ford county; the Hon. G. W. PATTON, Judge, presiding.

O. H. WYLIE, State's Attorney, (SCHNEIDER & SCHNEIDER, of counsel,) for appellants:

The Attorney General or a State's attorney may file an information on behalf of the People to question the exercise of corporate powers by a drainage district, and neither lapse of time nor the conduct of a relator constitutes a bar to the proceeding. *People* v. *Anderson,* 239 Ill. 269; *People* v. *Gary,* 196 id. 210; *People* v. *Burns,* 212 id. 231.

The defendant in a *quo warranto* proceeding must answer by disclaimer or by justifying, and if he justifies he must set out his title, particularly showing by what right he exercises or enjoys the privileges. *People* v. *O'Connor,* 239 Ill. 275; *People* v. *Anderson,* 239 id. 269; *People* v. *Burns,* 212 id. 227; *People* v. *Gary,* 196 id. 210.

The county court has no authority to organize a district in a single township, nor have the commissioners of a single township authority to organize a district, where the lands involved in the system of drainage extend into two or more townships. *People* v. *McDonald*, 208 Ill. 643; *McDonald* v. *People*, 214 id. 83; *People* v. *Schafer*, 228 id. 17.

County courts are courts of limited jurisdiction and have no powers other than those conferred by statute. Hurd's Stat. 1908, par. 23, p. 1274; *People* v. *Brown*, 218 Ill. 375; *Dingman* v. *Beall*, 213 id. 238.

When the record itself discloses the fact that the court had no jurisdiction of the controversy or that jurisdiction of the person of the defendant did not attach in the particular case the judgment is a mere nullity, and may be collaterally impeached by any person interested, whenever and wherever it is brought in question. *Briscoe* v. *Stephens*, 2 Bing. 213; 1 Black on Judgments, 347.

M. H. CLOUD, and F. M. THOMPSON, for appellees:

The office of an information in the nature of a *quo warranto* is not to tender an issue of fact. 17 Ency. of Pl. & Pr. 457; *People* v. *O'Connor*, 239 Ill. 272.

The defendants must answer by disclaimer or by justifying, and cannot traverse an information. *Clark* v. *People*, 15 Ill. 213; *Catlett* v. *People*, 151 id. 16; *People* v. *Cooper*, 139 id. 461.

It cannot be inquired into in *quo warranto* whether the evidence upon which the findings of a county court are based was sufficient. The remedy is appeal or writ of error. *People* v. *Drainage District*, 193 Ill. 428; *People* v. *Waite*, 213 id. 421; *People* v. *Munroe*, 227 id. 604.

The filing of the petition provided by statute and the giving of the statutory notice give the county court jurisdiction and authorize it to act. If it errs in its findings the

remedy is appeal or writ of error, and not *quo warranto. People* v. *Waite,* 213 Ill. 421.

The county court is a court of record, and its orders within its jurisdiction are to be respected and sustained, and can only be attacked by *quo warranto* when its judgments and orders are alleged to have been procured by fraud. *People* v. *Drainage District,* 193 Ill. 428.

During the pendency of the proceedings for the organization of a drainage district the county court is the proper and exclusive forum for litigating questions before it for determination; and those who fail to appear and assert their rights, and those who assert them unsuccessfully, are alike concluded by the decision of the court. *Gauen* v. *Drainage District,* 131 Ill. 446.

The filing of a proper petition gave the county court jurisdiction of the subject matter, and the posting, publishing and mailing of notices gave the court ·jurisdiction of the person. Hence, whatever it was authorized to find upon the hearing must be binding upon all who might have interposed objections to the organization of the district. *Leitch* v. *People,* 183 Ill. 569.

Jurisdiction is authority to hear and decide a cause, and it does not depend upon the correctness of the decision made. *People* v. *Talmadge,* 194 Ill. 67; *Sumner* v. *Milford,* 214 id. 388.

The county court, in matters in which it can act, is a court of general jurisdiction, and liberal intendments will be made in its favor. *Highway Comrs.* v. *Drainage District,* 207 Ill. 17; *Housh* v. *People,* 66 id. 178; *Propst* v. *Meadows,* 13 id. 157; *Matthews* v. *Hoff,* 113 id. 90.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an information in the nature of a *quo warranto,* filed in the circuit court of Ford county, Illinois, by the State's attorney, upon the relation of certain land owners, against G. W. Karr, V. E. Johnson and J. Clem, to test the

legality of the organization of Ford Special Drainage District of the counties of Ford and Iroquois. The respondents filed two pleas. The first, one of justification, stated that they were, at the time the information was filed, acting as drainage commissioners of said drainage district, and set up the various steps taken to organize said district, and their election and qualification as commissioners. The second averred that the lands included in the district were in four townships, the greater part being in Ford county, and further, that the cause was not being prosecuted in the interests of or on behalf of the public but solely in the interests of the relators, and that they were therefore precluded and estopped to prosecute such information, because two of them had been candidates for commissioners of said district and all the others had voted at said election. A demurrer filed to these pleas was overruled as to the first and sustained as to the second. Thereupon appellants filed nine replications to the first plea. The first replication was a general traverse of the whole plea and the second was a specific traverse or denial of its various averments. Replications 3 to 9, among other things, averred that all the lands in the proposed district were not connected with its ditches; that the district had its origin and ending in one township; that the ditch was not continuous and was not constructed by the voluntary action of the land owners; that the proposed ditch was deeper and wider than originally constructed and that all the lands were not shown to be damaged. A demurrer was sustained to said replications 3 to 9, inclusive, and appellants stood by their replications. Issues being joined as to the first and second replications, jury was waived and the cause submitted to the court. The court, after a hearing, entered judgment finding appellees not guilty, from which finding and judgment an appeal has been prayed to this court. Cross-errors have been filed by appellees questioning the ruling of the court in sustaining the demurrer to the second plea.

The proceedings in question were brought under section 76 of the Farm Drainage act, (Hurd's Stat. 1908, p. 867,) which reads: "Where two or more parties owning adjoining lands which require a system of combined drainage, have by voluntary action constructed ditches which form a continuous line, or line and branches, the several parties shall be liable for their just proportion of such repairs and improvements as may be needed therefor, the amount to be determined as near as may be on the same principle as if these ditches were in an organized district. Whenever such repairs and improvements are not made by voluntary agreement, any one or more owning parts of such ditch shall be competent to petition for the formation of a drainage district to include the lands interested in maintaining these ditches. The petitioner or petitioners for the formation of such district must show to the satisfaction of the court that his or their land is damaged through the lack of proper repairs or improvements to said ditch or drain. The form of procedure and the conditions heretofore prescribed in this act shall be observed as near as practicable; but the ditches shall be taken as a dedication of the right of way, and their construction and joining as the consent of the several parties to be united in a drainage district. These ditches, if open, shall be made tile drains when practicable." The principal question discussed in the briefs is whether the drainage district was legally organized under said statute.

In a proceeding by information in the nature of a *quo warranto* the defendant must either disclaim or justify. If he justifies he must set out his title specifically. He must show on the face of the plea of justification that he has a valid title to the office. The People are not bound to show anything. (*People* v. *O'Connor,* 239 Ill. 272; *Place* v. *People,* 192 id. 160; *Kamp* v. *People,* 141 id. 9.) The first plea filed by appellees was one of justification, setting out the proceedings taken in the county court to or-

ganize said district. From this it appears that a petition signed by eight persons was filed June 24, 1908, in that court, and that afterwards the names of certain of the signers were stricken from the petition. It sets forth, among other things, that the owners of lands therein described voluntarily constructed a main ditch and branches, which formed a continuous line and branches for the drainage of said land; that after the notice had been published and hearing had, the county court entered an order finding the averments of the petition true and appointed three persons to examine and report; that these commissioners, February 8, 1909, reported that they had found other lands, besides those described in the petition, to which the main ditch afforded an outlet, and "that emptying into said open ditch are innumerable branch ditches, both open and covered, which connect all such lands, which your petitioners report as interested in said system of drainage and should be included in said drainage district." The plea further avers that said report set out the names (about 350) and the post-office addresses of the owners of said lands which they requested should be included in said district, and also submitted and made a part of their report, maps, plans, profiles and specifications of the cost of the work, which had been submitted to them by an engineer whom they had employed; that the same day the county court entered an order approving the report of the commissioners, and finding that the lands described in the original petition, and the additional lands described in the report of the commissioners, drained into said main ditch, and that the said main "ditch was constructed by the voluntary action of the owners of the lands through which the same runs; that emptying into the said open ditch are innumerable branch drains, both open and covered, which connect all such lands and which were constructed by the voluntary action of the owners of such lands and lots; that all such lands and lots * * * belong to and require one system of drainage," and

that the court organized the district as a district by user, including all the lands recommended by the commissioners.

The district as thus organized was about six miles long and some two miles in width, containing approximately 8200 acres of farm land and 545 acres in the city of Paxton, making a total of approximately 8745 acres. Of the 545 acres in Paxton 360 acres are platted and about 185 acres unplatted. The land owners included in the boundaries of the district numbered approximately 480. From the maps, plans, profiles and estimate filed with the report made a part of the order and set out in this plea, it appears that the proposed cost of repairing and improving the ditch was originally estimated at $15,000, which was all to be spent upon the main ditch. Thereafter, in May, 1909, the commissioners filed an additional report, with an estimate, recommending an extension of the main ditch at its outlet for three-quarters of a mile, at an estimated cost of $5000. This recommendation was approved by the county court. It is clear from the record that it was not the intention, by the proceedings thus far undertaken, to do work of any kind on any of the branch ditches. The most definite description of such branch ditches or drains is the very general one which we have heretofore quoted in the order organizing the district.

The main purpose of the Farm Drainage act is to permit the organization of drainage districts on a petition of a majority of the property owners owning one-third of the lands, or of one-third of the property owners owning a majority of the lands. Section 76 was not intended to defeat this main purpose. If, however, adjoining land owners have constructed a ditch and have refused to keep it in repair, it was the purpose of said section 76 to permit the setting in motion of a proceeding to organize a district, including the lands connected with said ditch or branches built by the voluntary action of the land owners. Manifestly, the legislature did not intend that any and all lands

whose surface waters naturally drained into a common outlet could, solely because of such surface drainage into such common outlet, be brought into a drainage district under the provisions of said section 76. It is impossible to tell from the proceedings in the county court as set out in said first plea where any of the branch ditches were located. The pleadings, including the map furnished by the engineer, show the line of the main ditch only. It appears therefrom that there are directly connected with this main ditch the lands of only fourteen owners in said district, who represent less than one-fourth of the land. None of the branch ditches are shown on the map and no attempt is made to definitely describe them in any of the county court proceedings found in this record. From the proceedings of the county court as set out in this plea we think it is clear that much of the land within the proposed district is entirely unconnected with the main ditch or any of its branches, and that the only ground for bringing it into the proposed district is because it is alleged that such lands are interested in the said district and require the same for drainage. This, in our judgment, is not a compliance with this section. A district cannot be organized under said section 76 unless it is clearly shown that the owners of adjoining lands have by voluntary action constructed ditches forming "a continuous line, or line and branches." A petition to organize a district of this character should, either in specific words or by reference to a map, set out the description of the ditch and its branches and a description of the lands proposed to be included in the district, so that from such description the location of the ditch and branches, whether they are continuous, whether they connect with the lands proposed to be taken into the district, and whether they are located in one or more towns, can be readily ascertained from the petition. The facts in this case as set out in the plea of justification cannot be distinguished on this point from *People* v. *Strandstra*, 238 Ill. 341. In that

case the plea of justification set out the connection with the ditch and branches practically in the same general language as set out in the plea of justification here. We there said (p. 343) : "It appears, however, that in organizing the district, lands were included in the district which, while perhaps benefited, had never been voluntarily connected with the drains of the proposed district by the owners. * * * It is impossible to tell from the plea what lands had been voluntarily connected * * * or what lands had not been so voluntarily connected." It was held in that case that under the plea the district was not legally organized.

In establishing drainage districts the county court derives its jurisdiction from the statute, and no presumption can arise to support its action in any particular. Every fact essential to such jurisdiction must affirmatively appear of record. (*Payson* v. *People,* 175 Ill. 267; *Illinois Central Railroad Co.* v. *Hasenwinkle,* 232 id. 224; *Spring Creek Drainage District* v. *Highway Comrs.* 238 id. 521.) In this case it was necessary for the defendants to show by their plea that the county court, in organizing the district, had jurisdiction of the subject matter. This they failed to do. The trial court, therefore, should have sustained the demurrer of the appellants to the plea of justification.

Appellants having filed replications to this plea after the demurrer thereto had been overruled, the sufficiency of the plea, in law, to bar a recovery is admitted. (*Hepler* v. *People,* 226 Ill. 275.) That, however, did not prevent them from making an issue of fact upon certain allegations of the plea. (*People* v. *Gary,* 196 Ill. 310.) In *People* v. *Ridgley,* 21 Ill. 64, this court, in stating what it was necessary for the defendant to prove in a proceeding of this kind, said (p. 67) : "This court has decided that the People are not required to show anything. The entire onus is on the defendant, and he must show by his plea, and prove, that he has a valid title to the office. He must

set out by what warrant he exercises the functions of the office, and must show good authority for so doing or the People will be entitled to judgment of ouster." In *People v. City of Peoria,* 166 Ill. 517, this court said (p. 527) : "In the case at bar the city, among other things, alleged that the petition was signed by three-fourths of the legal voters and by three-fourths of the owners (in value) of the property within the territory annexed, and the burden was upon the corporation to prove that averment. It could not sufficiently do this by giving in evidence only its own findings and conclusions on that issue. It failed to make a *prima facie* case, and the court should have so instructed the jury." In *People v. Bruennemer,* 168 Ill. 482, in holding that a high school district was not legally organized, it was said (p. 487) : "The defendants did not prove the averment of the plea that the city belonged in the other township. A witness was examined on that question but knew nothing about it and did not claim to. * * * This testimony did not rise to the dignity of proof or make out a *prima facie* case." In *People v. Central Union Telephone Co.* 192 Ill. 307, the court held that the burden of proof rested upon the defendant, "who must prove his title as pleaded or such part of it as is traversed."

In this case appellees averred in the first plea that the county court, in organizing the drainage district, had jurisdiction of the subject matter. In the second replication appellants specifically denied that this averment was true. The only proof offered on the hearing before the trial court in support of this averment was the record of the county court in organizing the district, which had been theretofore set out in said plea of justification and which we have heretofore considered. The findings of the county court are not sufficient to show that said court had jurisdiction of the subject matter. The trial court, therefore, on the hearing before it, under the first and second replications to the

plea of justification, should have entered a judgment of ouster against appellees.

Counsel for the appellees, however, contend that as no propositions of fact were presented to the court, the question of the sufficiency of the evidence to sustain the plea of justification cannot be raised in this court. Counsel place the wrong construction upon the amendment to section 61 of the Practice act as to submitting to the court written questions to find specifically as to facts. It was recently held by this court in *Bare* v. *American Forwarding Co.* 242 Ill. 298, that this amendment did not authorize the preservation, for review in this court, of the findings of fact by the trial court by submitting questions of fact to the court. When the record of the county court was offered in evidence on this proceeding it was objected to by counsel for appellants. Furthermore, the question of the sufficiency of the evidence was properly preserved by motion made by appellants at the close of the hearing to exclude the evidence offered by appellees and to find them guilty as charged. *Smith* v. *Billings,* 169 Ill. 294; *Conway* v. *Garden City Paving Co.* 190 id. 89; *McMicken* v. *Safford,* 197 id. 540; *Grand Pacific Hotel Co.* v. *Pinkerton,* 217 id. 61.

It is further urged that the public is not interested in this proceeding and that the relators are estopped from prosecuting. This court said in *People* v. *Hepler,* 240 Ill. 196, that drainage districts are local subdivisions of the State, created by law for the purpose of administering certain functions of local government, and the commissioners exercise a portion of the sovereign power of the State. In *People* v. *Anderson,* 239 Ill. 266, the question as to the interest of the public and the relators in proceedings of this kind was considered and the authorities reviewed at some length. It was there said that a drainage district is a public corporation, and that the people are not barred, either by lapse of time or the conduct of the relators, from

questioning the legality of the organization by *quo warranto* proceedings. There is nothing in this record to show that the information was filed for the exclusive benefit of the relators. To the contrary, on the facts heretofore stated it is clear that the People are vitally interested in having the question decided whether this district was legally organized.

Many other questions have been raised in the briefs which it is unnecessary to decide in view of the conclusions already stated. This district was not legally organized.

The judgment of the circuit court will therefore be reversed and the cause remanded to that court, with directions to enter a judgment of ouster as prayed in the information. *Reversed and remanded, with directions.*