THE PEOPLE *ex rel.* Jesse L. Deck *et al.* Appellees, *vs.* R. F. McDONALD *et al.* Appellants.

*Opinion filed October 16, 1914.*

1. QUO WARRANTO—*information to test legality of organization of drainage district is not collateral proceeding.* An information in the nature of *quo warranto* to test the legality of the organization of a drainage district is not a collateral but a direct proceeding.

2. DRAINAGE—*question of jurisdiction may be inquired into in quo warranto.* In the matter of the organization of a district by user under section 76 of the Farm Drainage act neither the commissioners nor the county court can conclusively determine the question of jurisdiction, but such question is open to review in a *quo warranto* proceeding to determine the legality of the organization of the district.

3. SAME—*in a district by user the main ditch must be artificial.* To authorize the organization of a district by user under section 76 of the Farm Drainage act it is essential that the main ditch be artificial and constructed by the voluntary action of the land owners, and it is not sufficient that the main ditch is a stream or watercourse still in the state of nature.

4. SAME—*in quo warranto the entire burden is on the defendants.* In a *quo warranto* proceeding to test the legality of the organization of a Farm Drainage district the People are not required to show anything but the entire burden is upon the defendants to show by their pleas that they have a valid title, and they cannot do so by giving in evidence their own findings and conclusions on that issue.

5. SAME—*when description of branch ditches is too indefinite.* A petition to organize a district by user under section 76 of the Farm Drainage act is too indefinite in its description of the branch ditches, where all that is said of them is that "extending from said

main ditch and from said several branches there are other ditches and laterals extending to or into each tract of land in said proposed drainage district."

6. PLEADING—*question of jurisdiction may be raised by demurrer to pleas, in quo warranto.* If the facts averred in the pleas of justification in a *quo warranto* proceeding show that jurisdictional facts in the organization of the district are lacking, that question can be raised by demurrer to the pleas as well as by replication.

7. COSTS—*costs in quo warranto may be taxed against defendants.* In a *quo warranto* proceeding against the individuals acting as drainage commissioners to test the legality of the organization of the district the costs may be taxed against the defendants, as the action is against them as individuals.

APPEAL from the Circuit Court of Macon county; the Hon. W. C. JOHNS, Judge, presiding.

LOUIS A. MILLS, and WHITLEY, FITZGERALD & MC-LAUGHLIN, for appellants.

JESSE L. DECK, State's Attorney, OUTTEN, EWING, McCULLOUGH & WIERMAN, and REDMON & HOGAN, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an information in the nature of a *quo warranto* filed in the circuit court of Macon county by the State's attorney, on the relation of seventeen land owners in an alleged drainage district, against the respondents, R. F. McDonald, U. G. Barnett and T. J. Manecke, requiring them to show by what right they exercised the office of drainage commissioners of Union Drainage District No. 3 of the towns of Long Creek and Oakley, in that county. The respondents filed two pleas of justification, to which appellees demurred. After amendments had been made to the pleas the court sustained demurrers to both pleas. Appellants elected to abide by such pleas, whereupon the court entered a judgment of ouster and for costs against them. This appeal is prosecuted from that judgment.

The drainage district was organized by appellants on the petition of two land owners, under the provisions of section 76 of the Farm Drainage act, (Hurd's Stat. 1913, p. 973,) providing for the formation of districts by user where two or more parties owning adjoining lands have by voluntary action constructed ditches forming a continuous line or lines and branches which require repairs and improvements. The district as thus formed was about three and a half miles in length north and south and about three and a half miles in width east and west, and contained nearly 4000 acres of land belonging to more than eighty persons. Said section 76 states that the form of procedure for the formation of such districts shall be, as near as practicable, that provided for in the other provisions of the Farm Drainage act. Under said act, when the lands are all situated in one township the commissioners of highways of that town are to organize the district; when the lands are situated in two townships the district is to be organized under the direction of three commissioners, to be selected by the town clerk of the town in which the greater part of the district lies, from the highway commissioners of the two towns; and when the land is situated in three or more towns in one or more counties, the county court of the county in which the greater part of the land is located is charged with the responsibility of organizing the district. (Hurd's Stat. 1913, p. 963.) As the lands proposed to be included in the district here in question were located in two townships the district was organized by the second method of procedure, by three highway commissioners selected from the commissioners of the two towns by the town clerk.

The principal contention of appellees is, that the district having been organized by said commissioners and their finding having stated that they had heard and determined, in good faith, the matters according to law, their determination of the question of the organization is not subject to an attack in *quo warranto* proceedings; that such an at-

tack is collateral in its nature. All authorities do not give the same meaning to the word "collateral" in legal proceedings. (See VanFleet on Collateral Attack, 4, 5; 2 Words and Phrases, 1249.) Webster's New International Dictionary defines "collateral" as "accompanying; a side or secondary fact; * * * subsidiary; subordinate; indirect." A collateral proceeding has been said to be "another proceeding not for the direct purpose of impeaching the proceeding to which it is said to be collateral." (7 Cyc. 278.) This *quo warranto* proceeding was instituted for the specific purpose of impeaching and declaring illegal the organization of the district. This court has frequently stated that a *quo warranto* proceeding to test the legality of a drainage district was not a collateral but a direct proceeding. *People* v. *York,* 247 Ill. 591; *Shanley* v. *People,* 225 id. 579; *People* v. *City of Peoria,* 166 id. 517; *Mason and Tazewell Drainage District* v. *Griffin,* 134 id. 330; *Blake* v. *People,* 109 id. 504; *Osborn* v. *People,* 103 id. 224.

Counsel for appellants further contend that whether this be a collateral or a direct proceeding the decision of the commissioners in organizing the district can only be attacked on the ground of fraud. With this we cannot agree. The commissioners, under this act, cannot determine for themselves, finally, the jurisdictional facts of the organization of the district. If such facts,—any or all,—are lacking, the decision of the commissioners that they have jurisdiction can be inquired into by *quo warranto.* (*McDonald* v. *People,* 214 Ill. 83; *People* v. *Strandstra,* 238 id. 341; *People* v. *Karr,* 244 id. 374.) Under these authorities neither the highway commissioners nor the county court could, in organizing a district under the Farm Drainage act, conclusively determine the question of jurisdiction. In establishing drainage districts such tribunals derive their jurisdiction from the statute, and no presumption arises supporting their action in any particular.

Several of the authorities cited by counsel for appellants in support of this contention, such as *Gauen* v. *Drainage District,* 131 Ill. 446, and *Mason and Tazewell Drainage District* v. *Griffin, supra,* are not in point, for the reason, among others, that those two cases had under consideration the organization of a district under the Levee act and not under the Farm Drainage act. In the first of these two cases it was held that a district organized under one act was not subject to the provisions of the other. To the same effect is *People* v. *Crews,* 245 Ill. 318. Counsel cite and rely on *Craig* v. *People,* 188 Ill. 416. While there are some expressions in that case which might be held to support appellants' contention on this point, the court there stated (p. 421) that if the finding of the board should be regarded as *prima facie,* merely, "such *prima facie* finding is, in our opinion, undisturbed by the attack." Neither is the case of *People* v. *Drainage District,* 193 Ill. 428, in conflict with the rule here laid down, as in that case it was stated that no allegation was made that the county court, at the time of the organization of the drainage district, did not have complete jurisdiction of the person and the subject matter. Neither do we think that the argument of counsel for appellants on this point is upheld by the case of *People* v. *McDonald,* 208 Ill. 638. Anything that lends support to their argument in that case is in terms modified by the later decision in the same case, (*McDonald* v. *People, supra,*) which has been heretofore cited in support of the rule laid down in this opinion. A careful reading of the decisions cited as sustaining appellants' position, in the light of the facts in each case, shows that they are not in conflict with the holding of this opinion that the jurisdictional facts as to the organization of a drainage district can be inquired into by *quo warranto* proceedings.

Appellees contend that the main ditch of this district was not made by the voluntary acts of the land owners but that it is a natural water-course, known as Long creek. In

*Molohon* v. *Cashin*, 258 Ill. 86, this court, in construing section 76, said (p. 91): "It is only in cases where the complete system of drainage voluntarily constructed consists of artificial ditches constituting a continuous line or line and branches that this section authorizes the formation of a drainage district. A stream or water-course still in a state of nature cannot be described or considered as a ditch constructed by the voluntary action of adjoining land owners," and it was there held that the question whether the main ditch was artificial was jurisdictional. The fact that the district in that case was organized under said section 76 of the Farm Drainage act by the county court and this district was organized by highway commissioners does not in any way alter the situation as to the jurisdictional requirement of the main ditch being artificial and not natural.

Counsel for appellants further contend that even though this question can be raised in *quo warranto* proceedings, under the averments of the pleas it should have been held, in the ruling on the demurrer, that the main ditch was of artificial construction. On this point there is merit in the argument of counsel for appellees that the pleas merely set up the various steps taken in the organization of the drainage district without any independent averments of fact; that they allege only that the commissioners found that said main ditch was constructed by the voluntary action of the land owners; that appellees could not deny that the commissioners made such finding; that the pleas, in order to be replied to, should have unequivocally averred, in positive terms, that said main ditch (Long creek) was constructed by the voluntary acts of the land owners; that the findings of the commissioners on this question set out in the pleas are mere conclusions. In *quo warranto* proceedings to question the validity of the organization of drainage districts the people are not required to show anything. The entire onus is on the defendants, and they must show by their pleas that they have a valid title to the office. They

cannot do it by giving in evidence their own findings and conclusions on that issue. *People* v. *City of Peoria, supra; People* v. *O'Connor,* 239 Ill. 272; *People* v. *Karr, supra.*

If, however, it be conceded, for the purposes of this case, that the pleas satisfactorily averred that the main ditch was of artificial construction, the averments of the pleas as to branch ditches are so faulty that the demurrer was properly sustained. In *People* v. *Karr, supra,* it was said (p. 382) : "A petition to organize a district of this character should, either in specific words or by reference to a map, set out the description of the ditch and its branches and a description of the lands proposed to be included in the district, so that from such description the location of the ditch and branches, whether they are continuous, whether they connect with the lands proposed to be taken into the district, and whether they are located in one or more towns, can be readily ascertained from the petition." The petition of the land owners asking for the organization of this district, after describing in a general way the main ditch and certain branches and the land to be drained, continued as follows: "Extending from said main ditch and from said several branches there are other ditches and laterals extending to or into each tract of land in said proposed drainage ditch." No attempt is made, other than by the words just quoted, to describe or locate said lateral ditches. It would be impossible from this description to locate them. In *People* v. *Karr, supra,* the description as to lateral ditches which was held insufficient read (p. 380) : "That emptying into said open ditch are innumerable branch drains, both open and covered, which connect all such lands and which were constructed by the voluntary action of the owners of such lands and lots; that all such lands and lots * * * belong to and require one system of drainage." The description in this petition as to said lateral ditches is as faulty as the attempted description of the lateral ditches in *People* v. *Karr, supra.* The same indefinite description was found

in *People* v. *Strandstra, supra.* The decisions of this court in those cases must control here, and the description as to the lateral ditches must be held insufficient to comply with the law.

Counsel for appellants argue that such holding will render impossible, in most instances, the organization of a drainage district under said section 76 of the Farm Drainage act; that drains, especially covered drains, cannot be easily located on farm lands. The principal purpose of the Farm Drainage act is to permit the organization of drainage districts on a petition of the majority of the owners owning more than one-third of the lands or one-third or more of the owners owning a major part of the land. The purpose, as was held in *People* v. *Karr, supra,* of said section 76 was to permit the organization of districts thereunder only as to lands connected by ditches built by the voluntary action of the land owners. If such ditches can not be definitely located or described in the petition then the lands upon which they are located cannot be organized into a drainage district under said section 76. There is nothing, however, to prevent the organization of such drainage district, under the principal provisions of said Farm Drainage act, by the united action of at least one-third of the land owners owning a major part of the land or the majority of the land owners owning more than one-third of the land. Section 76 was not enacted for the purpose of authorizing a few land owners to organize a large drainage district against the wishes of the other owners unless the provisions of section 76 are strictly followed.

It is true that the question as to whether jurisdictional facts existed could be raised, as contended by counsel for appellants, under replications filed to the pleas. Under such replications not only the records of the organization could be offered but evidence *dehors* the record would be admissible. (*People* v. *Gary,* 196 Ill. 310; *People* v. *City of Peoria, supra; Mason and Tazewell Drainage District* v.

*Griffin, supra.*)   If the facts averred in the pleas of justification show that jurisdictional facts are lacking as to the organization of the district, that question can also be raised by demurrer.   Indeed, in *People* v. *Karr, supra,* the only proof in support of the pleas after replications filed was the record of the county court as to the organization of the district.

Counsel for appellants contend in their original brief that the court refused to allow them to amend their pleas after demurrer was sustained thereto.   We find nothing in the record showing that they asked leave to file such additional pleas or the court's refusal.

This action was against appellants as individuals.   The court did not err, therefore, in taxing costs against them. *People* v. *Strandstra, supra.*

The judgment of the circuit court is affirmed.

*Judgment affirmed.*