(No. 32811.—

THE PEOPLE *ex rel.* Goldie M. White *et al.,* Appellants, *vs.* LAWRENCE UNDERWOOD *et al.,* Appellees.

*Opinion filed November 18, 1953—Rehearing denied Jan. 18, 1954.*

HERSHEY, J., took no part.

SCOTT HOOVER, State's Attorney, and PROVINE & MILEY, both of Taylorville, for appellants.

FLESHER & TAYLOR, of Taylorville, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This is a direct appeal from a judgment of the circuit court of Christian County dismissing a *quo warranto* proceeding which challenged the legality of the creation and organization of Drainage District No. 1 of the town of Johnson, Christian County, as a district by user, under section 76 of the Farm Drainage Act (Ill. Rev. Stat. 1953, chap. 42, par. 161,) and the authority of the individual defendants herein to hold the offices of commissioner and clerk of said district. A franchise being involved, the appeal is properly taken direct to this court.

On October 20, 1950, Perley B. Oller, D. W. Johnston, E. F. Harmon, Daisy Oller and Cleona J. Morris, owners of 300 acres in Johnson Township, filed with the town clerk a petition for organization of a drainage district by user, alleging that all of the lands proposed to be included in said district, embracing 820 acres, lay in one drainage basin, draining through the same outlet into a certain natural branch, and that said lands had been and were then connected by ditches forming a continuous line and branches which had been constructed and connected by mutual agreement and voluntary action of the owners of said

lands; that the outlet and ditches needed restoring, repairing, improving, enlarging and cleaning out, which had not and could not be done by voluntary agreement, and praying that the lands described in said petition be organized into a drainage district for the purpose of accomplishing such work by special assessment. A plat was attached to such petition showing the land proposed to be organized and the alleged location in a freehand sketch of the old ditch which was the basis of the filing of the petition under the user statute.

A first meeting was held on said petition by the highway commissioner, Lawrence Underwood, after proper notice, at which all landowners concerned were present in person or by attorney except Cleona J. Morris. The commissioner filed minutes of such meeting and an order finding that the facts set forth in the petition were true and that the district should be organized. An adjourned meeting was held on November 25, 1950, and the highway commissioner filed minutes of such adjourned meeting and a report and recommendations of a civil engineer as to lands to be included and excluded, together with an estimate of costs and benefits. At such time the highway commissioner also filed an order organizing a drainage district as prayed, except that certain lands were excluded from the district as not being a proper part thereof. Said order also included construction plans which changed the alignment of the ditch so as to run along' or aparallel to section lines, east and west across certain land rather than along a public road, and an extension was added running north and south in the westerly part of the district. A classification list of benefits was also prepared.

On January 6, 1951, the State's Attorney of Christian County, on relation of appellants-relators, Goldie M. White, Opal Curran, Sophronia Johnson, Drusilla Johnson, Bertha K. MaHarry, and Mary K. Magner, landowners objecting to formation of said district, filed the *quo warranto* pro-

ceeding in circuit court. The defendants-appellees' answer and plea of justification denied the allegations of the complaint and cited the proceedings in the organization of the alleged district, attaching copies of the petition to organize, the order organizing the district, and all the minutes of the proceedings, alleging that such proceedings were pursuant to statute and that defendants lawfully held their offices of commissioner and clerk of the district. A motion to strike the answer and plea of justification, challenging the jurisdiction of the commissioner and sufficiency of the answer, were denied by the trial court. Thereafter, an amendment to the answer and plea of justification was filed, wherein the ownership of the lands in the proposed district prior to 1891 by predecessors in title of the present owners was generally alleged, and the location of artificial lateral drains connecting to the main ditch was specifically set forth.

The appellants-relators moved to strike the answer as amended, which was denied, and thereafter replied to the answer as amended, generally denying all the allegations therein. The reply was thereafter amended to add the affirmative defenses of limitations, abandonment, *laches,* nonuser and estoppel. A motion to strike the amended reply was denied, and, upon evidence heard at the trial, the trial court entered a judgment in favor of the defendants, dismissing the complaint in *quo warranto.*

At the trial, the original petition for organization of the drainage district and the proceedings thereon before the highway commissioner, including minutes of meetings and orders, were introduced in evidence, and in addition thereto numerous witnesses testified. From such evidence, it appears that the outlet of the drainage ditch here in question was a natural watercourse or draw about 12 or 15 feet deep and 40 or 50 feet wide, extending west from the south fork of the Sangamon River, across a road, and about two thirds of the way across 80 acres of land owned

by Opal Curran, the west terminal of said draw being an undetermined distance north of the south line of the Curran land. From the west end of said natural draw or gulley, there is a ditch, apparently man made, about a foot deep and 20 to 30 feet wide, entending in a southwesterly direction across the Sophronia Johnson 80 acres to a point on the south line thereo, estimated to be from 100 to 300 feet east of the southwest corner of the Johnson 80. At this point there is a concrete culvert south across the road. Formerly there had been a wooden bridge at this point and at one time the ditch crossing the road was 15 or 20 feet wide and about 5 feet deep. A roadside ditch then runs westerly along the north side of the MaHarry 60 acres and the Perley Oller 80 acres, through a culvert under Perley Oller's lane, and then south through the center of the Perley Oller 80 acres to join a westerly ditch across said 80 acres. From the aforementioned roadside ditch, there is also an artificial ditch running south along the east side of the Perley Oller 80 acres to about the center thereof, and thence westerly across said 80 acres. There is a conflict in the testimony as to the exact course and ultimate terminus of this particular ditch after it leaves the Perley Oller 80 acres. The minutes of the original hearing on the petition before the highway commissioner, which were duly introduced into evidence, reflect statements by parties in interest that the lands of Goldie M. White are tiled into the open ditch and that the lands of Daisy Oller are tiled into the White tile. There was also evidence of manmade roadside ditches along the Magner and other lands in the district, which drained such lands and emptied into the main open ditch through a small ditch running through the lands of one D. W. Johnston. The plat of the proposed district and main ditch, which was introduced in evidence, indicates that the main ditch was along the north side of the Harmon 80 to the northeast corner of the Drusilla Johnson 80, from which it went in a northerly direction,

thus giving drainage to both the Harmon and Drusilla Johnson 80s.

The plaintiffs-appellants assign as error the trial court's failure to find that the highway commissioner had no jurisdiction to organize a drainage district, pursuant to section 76 of the Farm Drainage Act, the trial court's holding that the drainage district was lawfully organized, and the trial court's refusal to enter judgment of ouster. However, the principal argument relied on by plaintiffs-appellants in support of their assignment of error is that there is no evidence whatsoever of lateral drains connecting the outlying areas of the district, owned by Goldie M. White, Opal Curran, Sophronia Johnson, Drusilla Johnson, Bertha K. MaHarry, and Mary K. Magner, to the main open ditch.

Section 76 of the Illinois Farm Drainage Act (Ill. Rev. Stat. 1953, chap. 42, par. 161,) authorizing the creation of drainage districts by user and under which the drainage district here in question purports to be organized provides as follows: "Where two or more parties owning adjoining lands which require a system of combined drainage, have by voluntary action constructed ditches which form a continuous line, or line and branches, the several parties shall be liable for their just proportion of such repairs and improvements as may be needed therefor, the amount to be determined as near as may be on the same principle as if these ditches were in an organized district. Whenever such repairs and improvements are not made by voluntary agreement, any one or more [persons] owning parts of such ditch shall be competent to petition for the formation of a drainage district to include the lands interested in maintaining these ditches. The petitioner or petitioners for the formation of such district must show to the satisfaction of the court that his or their land is damaged through the lack of proper repairs or improvements to said ditch or drain. The form of procedure and the conditions heretofore prescribed in this act shall be observed as near as practicable;

but the ditches shall be taken as a dedication of the right of way, and their construction and joining as the consent of the several parties to be united in a drainage district. These ditches, if open, shall be made tile drains when practicable."

It has been established that *quo warranto* is a proper action to test the validity of a drainage district organized under section 76 of the Farm Drainage Act, (*People ex rel. Cooney* v. *City of Peoria,* 166 Ill. 517; *People ex rel. Shanley* v. *O'Connor,* 239 Ill. 272; *People ex rel. Deck* v. *McDonald,* 264 Ill. 514,) and in such a proceeding the only question to be determined is the legality of the organization, and questions as to the discretion of commissioners as to kind, character and location of proposed drains and improvements cannot be considered. *People ex rel. Shamel* v. *Baldridge,* 267 Ill. 190.

In a proceeding by *quo warranto* to test the legality of a drainage district organization, the defendants have the entire burden of proving their plea of justification, and if the defendants do not prove a valid organization a judgment of ouster is warranted. *People* v. *O'Connor,* 239 Ill. 272; *People* v. *McDonald,* 264 Ill. 514; *People* v. *Baldridge,* 267 Ill. 190.

Under the language of section 76 of the Farm Drainage Act, as interpreted by this court, it has been established that in order to create a drainage district by user the following conditions must exist:

1. The owners of adjoining lands to be brought within the district must have artificially constructed by their voluntary action a continuous line of ditches and laterals connecting all lands proposed to be included. *People ex rel. Allard* v. *Strandstra,* 238 Ill. 341; *Molohon* v. *Cashin,* 258 Ill. 86; *People ex rel. Croft* v. *Karr,* 244 Ill. 374.

2. All of said ditches must drain into a common outlet. *People* v. *Baldridge,* 267 Ill. 190.

3. Failure to repair and improve said ditch by voluntary agreement.

4. Damage to the lands of the petitioners through lack of proper repair or improvement to such ditch.

Under such statute, if any lands included in the district are shown to be not connected to the artificial ditch, the commissioner does not have jurisdiction, power, or authority to organize such a district by user. (*People* v. *Karr,* 244 Ill. 374; *Molohon* v. *Cashin,* 258 Ill. 86; *People* v. *McDonald,* 264 Ill. 514.) Thus, in the *quo warranto* proceeding before the trial court to determine the legality of the drainage district organization, the burden was on the defendants-appellees to produce evidence establishing the existence of the facts required by section 76 of the Farm Drainage Act for the valid creation of a drainage district by user. The determination of the existence or nonexistence of such facts becomes a question of fact for the trial court to determine from the evidence. The rule has been many times announced that where the trial court has heard testimony in open court and sees and hears the witnesses, this court will not reverse the findings of fact unless they are palpably against the weight of the evidence or contrary to the manifest weight of the evidence. (*Black* v. *Gray,* 411 Ill. 503; *Calcutt* v. *Gaylord,* 415 Ill. 390.) Here, the evidence showed conclusively that a ditch had been constructed in the past by voluntary action, that the ditch had been allowed to fill up and had not been kept in repair by voluntary agreement, and that damage had been suffered by the petitioners. There was evidence before the trial court of lateral drains connecting the outlying areas of the district to the main open ditch, although there is a conflict thereon. From the record, we cannot say that the trial court's finding was palpably against the weight of the evidence.

Plaintiffs-appellants place great reliance on *People* v. *Karr,* 244 Ill. 374, and *People* v. *McDonald,* 264 Ill. 514. Those cases are clearly distinguishable from the present case, in that in each of those cases it was clearly established

that a great percentage of the land in the proposed district was entirely unconnected with the main ditch or any of its branches. That is not true in the present instance but, on the contrary, the court has found from the evidence that all the lands included in the district are connected.

Section 76 of the Farm Drainage Act provides that the form of procedure and the conditions prescribed in the Illinois Farm Drainage Act shall be observed as near as is practicable in applying said section. Under such provision, the petition under said section 76 should be similar to that required for the organization of a district under section 11 of the act, (par. 92,) the only material difference being in the number of required signatures. Here, a verified petition, accompanied by a plat, was filed which alleged the ultimate facts required by section 76, the boundaries of the proposed district, and the plat disclosed the course of alleged drain. Such petition gave the highway commissioner jurisdiction to proceed to a hearing. On such hearing, the highway commissioner found the jurisdictional prerequisites to exist. The finding has been confirmed by the trial court on the basis of evidence presented at the hearing of the *quo warranto* proceeding.

Under the facts as presented to us in this case, the trial court was correct in holding that the highway commissioner had jurisdiction to organize a drainage district by user and that such drainage district was lawfully organized.

As heretofore noted, in a *quo warranto* proceeding this court will not inquire into questions as to the discretion of the commissioners in reference to the kind, character, and location of proposed drains and improvements, but merely pass upon the legality of the organization. The jurisdiction of the highway commissioner does not extend beyond entering the order organizing the drainage district by user. Thereafter, there should be an election of three of the land owners of the district to act as commissioners. (Ill. Rev. Stat. 1953, chap. 42, par. 97.) These newly elected drain-

age commissioners will thereupon decide upon the plans for repairs and improvements and determine the proportionate part of the cost to be borne by the respective tracts. (Ill. Rev. Stat. 1953, chap. 42, par. 103.) The relators in this case will have ample opportunity in the future proceedings to fully protect themselves. They will be assessed only for the benefits they receive, and they will have an opportunity to object to the assessments if they are not satisfactory. (Ill. Rev. Stat. 1953, chap. 42, par. 105.) If the commissioners overrule the objections, these landowners can appeal to the county court. (Ill. Rev. Stat. 1953, chap. 42, par. 106.) The affirmative defenses of limitations, abandonment, *laches*, nonuser and estoppel set up by plaintiffs-appellants are without merit, in that they are supported neither by the facts nor the law applicable to the facts. The judgment of the trial court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE HERSHEY took no part in the consideration or decision of this case.