THE PEOPLE *ex rel.* Caroline Shamel, Appellant, *vs.* F. H. BALDRIDGE *et al.* Appellees.

*Opinion filed February 17, 1915.*

1. QUO WARRANTO—*what questions cannot be raised by replication to pleas.* In a *quo warranto* proceeding against drainage commissioners to test the legality of the organization of a district by user, where the defendants file a plea of justification, the only question to be determined is whether the district is legally organized, and the questions of the discretion of the commissioners as to the kind, character and location of the proposed drains, and of the power of the commissioners to make an agreement to pay money to another drainage district as compensation for taking care of the additional flow of water, cannot be considered.

2. SAME—*the entire burden of establishing valid title is on the defendants.* In a proceeding by an information in the nature of *quo warranto* against drainage commissioners to test the legality of the organization of the district the defendants have the entire burden of establishing their plea of justification, which must show, on its face, a valid organization; and if such proof is not made the People are entitled to a judgment of ouster.

3. SAME—*what does not prove that district does not embrace lands in another district.* A recital in the final order organizing a drainage district that the district does not include any lands which have been or are a part of another drainage district, is not sufficient proof of that fact to sustain a plea of justification to an information in the nature of *quo warranto* alleging that the district includes lands which are part of another district. (*Hepler* v. *People,* 226 Ill. 275, and *People* v. *Burns,* 212 id. 227, distinguished.)

4. DRAINAGE—*drainage district cannot legally embrace land in another district.* A drainage district cannot be legally organized, in whole or in part, out of the territory of another legally organized district, and the legality of a district so organized may be inquired into by an information in the nature of *quo warranto.*

5. SAME—*what is not contemplated by section 76 of the Farm Drainage act.* It was not contemplated by section 76 of the Farm

Drainage act that any and all lands from which the surface water naturally drains into a common outlet can, by reason of such natural drainage, be brought into a drainage district under such section.

6. SAME—*what is required to authorize organization of a district by user.* To authorize the organization of a district by user under section 76 of the Farm Drainage act, the owners of the lands proposed to be brought in must have voluntarily, by the construction of continuous artificial ditches, connected their lands with a common outlet, also of artificial construction.

7. SAME—*what portion of land should not be considered as connected with common outlet.* If the surface water on a portion of a tract of land connected by an artificial ditch with a common outlet does not flow into the artificial ditch when it runs off over the surface, such portion of the tract should not be considered as being connected by the artificial ditch with the common outlet.

8. PLEADING—*replication should aver specific facts claimed to constitute fraud.* A demurrer is properly sustained to a replication averring that a drainage district was fraudulently organized, where the replication does not set out the specific facts claimed to constitute fraud.

APPEAL from the Circuit Court of Christian county; the Hon. A. M. ROSE, Judge, presiding.

HARRY HERSHEY, State's Attorney, (W. B. McBRIDE, R. C. NEFF, and C. H. SHAMEL, of counsel,) for appellant.

TAYLOR & TAYLOR, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a *quo warranto* proceeding brought in the circuit court of Christian county by the State's attorney to test the legality of the organization of Union Drainage District No. 1 of the towns of Stonington and May, in said county. The information stated that appellees, F. H. Baldridge, Lawrence Boll and G. T. Smith, claimed to act as drainage commissioners of said pretended drainage district, setting out various steps taken to organize the said district; that as a part of said proceedings a plat was filed showing an alleged connection of various tracts of land by means

of ditches and drains; that said plat showed drains and ditches not in existence at that time and included lands not connected by ditches, and also lands in another organized drainage district. The information concluded by calling upon appellees to show by what warrant said drainage district enjoyed the liberties, privileges and franchises claimed. A plea was filed to this information. A demurrer thereto was sustained and an amended plea was filed, which set out that the district was organized under section 76 of the Farm Drainage act, (called the User act,) and various steps taken in conformity with said act to organize the district thereunder, among other things, that the said district was legally organized as provided under said act, and "did not, or does not now, include lands within the boundaries thereof * * * which were not connected by drains and ditches with the drains, ditches or branches forming the outlet of said system of drains and ditches connecting therewith, and that said district, as organized, did not and does not include any lands which were heretofore or are now a part of any legally organized drainage district; that each and every tract therein was and is connected by means of drains and ditches, either open or covered, into a system of combined drainage through a common outlet," concluding with a verification. On leave of court appellant replied double, filing several replications. Demurrers were sustained to some of them, and additional replications were filed and demurrers again sustained to most of them, appellant abiding by the pleadings as to said replications and demurrers. Issues were finally joined upon the plea of justification and the first and third original and fifth additional replications. The issues thereunder were submitted to the jury, which, after hearing the evidence, found in favor of appellees.

The first original replication charged, in general terms, that the appellees had usurped the office of drainage commissioners, and concluded to the country. The third original replication was general and denied the material allega-

tions and each of them, and concluded to the country. The fifth additional replication charged that the appellees were usurping authority because lands were included in the district which were not connected by drainage ditches with the drains and ditches forming the outlet, etc., and further charged that the said district theretofore and then included lands which were a part of a legally organized drainage district. This replication concluded with a verification, and appellees filed a rejoinder denying the allegations of the replication and concluding to the country. Counsel for appellees state in their briefs that these three replications are not found in the record and are not abstracted. In this they are in error. The substance of each is abstracted and they are found in full in the record.

Counsel for appellant argue that the court erred in sustaining the demurrers to various replications. These replications so held demurrable raised the question that the district, as shown by the pleadings, was not organized for the purpose of repairing and improving, and did not propose to repair and improve, existing drains, but was for the purpose of making a new system of drains and at new locations different from existing drains and ditches, and in so doing would take and destroy timber for a distance of several rods on each side of said drains and ditches, said land not being condemned for said purpose; that the only thing that could be done under the User act was to clean out and repair the ditches already in existence. The only question that could properly be raised in this *quo warranto* proceeding was whether the district was legally organized. The question of the discretion of the commissioners as to the kind, character and location of the proposed drains could not be raised. The court rightly sustained the demurrers to the replications raising such questions.

Before the issues were heard by the jury appellant also asked leave to file a supplemental information, alleging, among other things, that appellees had agreed to pay out

267 — 13

certain moneys to another drainage district as compensation for taking care of the additional water that would flow from this drainage district. The question sought to be raised by this supplemental petition could not properly be raised under an information filed to challenge the legal organization of the district.

The alleged drainage district the organization of which is here questioned lies mostly in the township of Stonington, only a small portion being in the town of May, and includes within its boundaries some 1691 acres of land, belonging to about fourteen different owners. A public highway runs through a part of the district, as does also the right of way of the Wabash Railroad Company. The general direction of the drainage through the proposed ditches and tiles is to the north and north-west across six or seven sections of land, finally finding an outlet into Buckhart creek, which runs from the east to the west, but slightly northerly. As already stated, appellant in its information claimed that there were lands embraced in the proposed drainage district that were at that time included in another legally organized district. Appellees in their plea of justification stated that the lands embraced in said district did not include lands included in another district. Appellant, in the fifth additional replication, denied or traversed the averment of the plea. At the close of all the evidence appellant offered an instruction requesting the court to instruct the jury to find for the People because there was no evidence in the record sustaining the averment of appellees' plea here under consideration. This instruction was denied. Appellees offered in evidence the record of the proposed district. This record was substantially set out in the plea of justification. The only part of this plea, or of the record of the organization introduced, touching upon this question, was the statement in the final order organizing said drainage district heretofore quoted from the plea, that the district as organized "did not and does not include

any lands which were heretofore or are now a part of any legally organized drainage district." Appellant sought to show by evidence that a portion of the land included was in another district, called the Mutual Drainage District. Counsel for appellees objected to the introduction of this evidence so far as the record of the Mutual Drainage District was concerned, and the objection was sustained. The objection of appellees was also sustained to much of the oral testimony of the witnesses offered to show such fact. At the request of the appellees the court instructed the jury that there was no evidence in the case that any of the lands included within the boundaries of said Union Drainage District were included in any other organized district. Counsel for appellees insist that under the authorities the burden was upon appellant to prove, under the pleadings, if that were the fact, that some of the lands were so included in another legally organized district, while counsel for appellant contend that the burden of proving this fact rested upon appellees.

In a long line of decisions this court has held that in proceedings by information in the nature of *quo warranto* the defendant, if he justifies, must set out his title specifically and must show on the face of the plea that he has a valid title to the office; that the People are not called upon to show anything; that the entire onus is on the defendant, and that he must not only show by his plea, but prove, that he has a valid title to his office, and if this proof is not made the People will be entitled to judgment of ouster. (*People* v. *Ridgley*, 21 Ill. 64; *Chicago City Railway Co.* v. *People*, 73 id. 541; *People* v. *City of Peoria*, 166 id. 517; *People* v. *Bruennemer*, 168 id. 482; *McGahan* v. *People*, 191 id. 493; *People* v. *Central Union Telephone Co.* 192 id. 307; *People* v. *Central Union Telephone Co.* 232 id. 260; *People* v. *O'Connell*, 239 id. 272; *People* v. *Karr*, 244 id. 374; *People* v. *McDonald*, 264 id. 514.) This is also the rule in other jurisdictions. The form of

the issue in *quo warranto* between the State and the respondent is not like that in other civil proceedings, but the defendant is called on to show title by his plea, which presents an issue of fact, and the burden of proof is upon him to establish it. (17 Ency. of Pl. & Pr. 481; Jones on Evidence,—2d ed.—sec. 193; High on Ex. Legal Remedies,—2d ed.—sec. 629; 10 Ency. of Evidence, 454.) However informally or inaptly worded the fifth additional replication was, it specifically denied the averment of the plea that no property in the proposed district was included in any other legally organized district. Appellees filed a rejoinder to the averments of this replication, concluding to the country, and the question was submitted to the jury. Under the rulings of the court, both during the trial and by instructions, it is manifest that all parties understood that this issue raised by the fifth additional replication was submitted to the jury for decision. Counsel for appellees cannot, therefore, urge the question now as to this issue not being properly raised by the pleadings. Whatever informality there was in said fifth additional replication was waived by appellees joining and submitting the issues thereunder to the jury. Having submitted the issue under these pleadings to the jury, the burden of proof rested upon appellees to show that no land in the proposed district was included within another legally organized district. The only proof offered by appellees to sustain their contention under this issue was the record of the organization of the drainage district, and, as already mentioned, the only part of that which referred to this question was the statement in the final order of the commissioners in organizing the district, that said district did not include lands now a part of another legally organized district. This was a mere conclusion of the commissioners. This court held in *People v. City of Peoria, supra,* where the issue was raised by similar pleadings, that the findings of the city council of the city of Peoria of the facts constituting statutory conditions

under which the city exercised the power of annexing territory, together with the proof of the ordinance reciting such facts, did not make out a *prima facie* case for the defendants in a *quo warranto* proceeding. In *People* v. *Karr, supra,* and *People* v. *McDonald, supra,* this court laid down this same rule, stating that the drainage commissioners could not show that they had a valid title by giving in evidence their own findings and conclusions that the district was legally organized. A drainage district cannot be legally organized, in whole or in part, out of the territory of another legally organized district, and the legality of a district so organized can be inquired into by *quo warranto.* (*People* v. *Lease,* 248 Ill. 187; *People* v. *Crews,* 245 id. 318.) This finding of the commissioners being the only proof to support the averment of the plea in question, the court should have instructed the jury, on this record, to find for appellant on this issue. Nothing is said in *Hepler* v. *People,* 226 Ill. 275, where certain averments of the plea were not put in issue by replications, or in *People* v. *Burns,* 212 Ill. 227, which was disposed of on demurrer, that in any way conflicts with the conclusions here laid down.

The further question was raised by the pleadings and submitted to the jury as to whether all the owners of lands included in the boundaries of the proposed district had by voluntary action constructed ditches which formed a continuous line or lines and branches, as required by said section 76 of the Farm Drainage act. The lands as to which there can be on this point any serious question under the evidence, are located in the southern end of the district, south-easterly of the Wabash railroad. The following plat shows approximately the location of such lands, the rest of the district being situated north and west of the railroad. The heavy dotted line shows the boundary of the south-easterly portion of the proposed district. The small circular lines indicate where low spots in the land are situated.

Some of the witnesses called some of these low spots buffalo wallows, or sloughs:

This court has held that the legislature did not intend by said section 76 that any and all lands whose surface water naturally drained into a common outlet, could, merely because of such surface drainage into such common outlet, be

brought into a drainage district under the provisions of the said section. (*People* v. *McDonald, supra; People* v. *Karr, supra; People* v. *Strandstra,* 238 Ill. 341.) Under these authorities the owners of the lands to be brought within the district must voluntarily, by the construction of artificial ditches, connect their lands in a common outlet, also artificially constructed. This section must receive a reasonable construction. Of course, it was not intended that every foot of land in the district should have an artificial drain constructed by the owners, connected with a common outlet. It is sufficient if the owner of land included in the district has constructed in it an artificial ditch connecting with the common outlet which for all practical purposes will take care of the surface drainage of such land. If the surface drainage of a portion of such land, whether it be a low spot or not, when it runs off over the surface does not flow into this artificial ditch, then that portion of the land of the owner should not be considered as being connected by such artificial ditch with a common outlet. In view of the evidence in this record we are disposed to think that instruction 6 given for appellees was liable to mislead the jury on this point, and was certainly in conflict with instruction 5 given for appellant.

The appellant insists that some of the instructions were misleading because they omitted the word "constructed," in referring to drains and ditches voluntarily connected with a common outlet by land owners. The word should have been included in the instructions in question, but we do not think its omission was so misleading as to amount to reversible error.

One of the most serious questions raised on this branch of the case is as to whether the evidence shows that all of the tracts of land were connected by artificial drains or ditches, voluntarily constructed, with a common outlet of the proposed district. Counsel for appellant contend that the low spot just south of the center of section 33, shown

by the circular lines on a part of the Solliday and Conrad
Stork lands, being a natural depression and not artificially
constructed, could not be considered as a part of connecting
ditches or drains voluntarily constructed, and that therefore
the lands of Conrad Stork and Henry Emerson, shown on
the above plat in the east part of said section 33, were not
connected with the common outlet by artificial drains. The
plat drawn by the engineer as a part of the plan of the
proposed district in organizing this district shows an arti-
ficial ditch through the center of this low ground, running
to the southern boundary line of the Emerson tract, but the
proof shows, without contradiction, that there was no such
artificial drain or ditch through any part of this low spot
or buffalo wallow. The engineer himself, while upon the
stand, said that he did not know that there was any such
drain there; that he thought there was when he made the
plat. There is no testimony that we find in the record that
shows that any artificial drain was made on the Emerson
land connecting with this low spot. There is some testi-
mony, however, that indicates that there had been at some
time an artificial drain connecting a part of the Conrad
Stork land with this low spot. Under the decisions of
this court the artificial drains constructed by the voluntary
action of the owners must be continuous and connected
with the common outlet. Under the proof now in this rec-
ord we do not think it can be held that this natural de-
pression on the Solliday and Conrad Stork lands could be
properly held as a part of an artificial drain, so as to con-
nect the Stork and Emerson lands with the common outlet.
There was some proof in the record that tended to show,
also, that the low spots on the Frank Stork and Vandeveer
lands must be considered a part of the artificial ditch in
order to connect these lands with the common outlet. The
proof in this record tends strongly to show that the Henry
Emerson tract, a part of the Conrad Stork tract and the
Vandeveer tract, and possibly a part of the Frank Stork

land included within the proposed boundaries of the drainage district, were drained, at the time of the trial, by tile to the east and south into another drainage district and did not drain into any of the ditches or outlets of the proposed drainage district. While this evidence might not be conclusive on the point here in question, it would tend to show that the owners, at the time that the proposed district was attempted to be organized, did not think that the portion of the lands that were tiled and drained into another district were connected with the proposed drainage district by voluntarily constructed artificial ditches. As the judgment of the trial court must be reversed for the reasons already stated, we do not deem it necessary to consider further the questions raised as to the Emerson, Stork and Vandeveer lands being connected by artificial ditches voluntarily constructed, connected with a common outlet. What we have already said will sufficiently advise the parties as to the rules that should be applied in passing on these questions.

While the question is not argued at length in the briefs as to where the burden of proof rested to show that all the lands in the proposed district were connected by artificial ditches voluntarily constructed by the owners, under the pleadings in this case, the authorities already cited hold that this burden rested upon appellees.

Counsel for appellant insist that the court erred in sustaining a demurrer to a replication filed by them averring that the district was fraudulently organized. The replication in question did not set out the specific facts claimed to constitute fraud. That charge only amounted to a conclusion of the pleader. (*People* v. *Henry,* 236 Ill. 124; 9 Ency. of Pl. & Pr. 986.) The court therefore did not err in sustaining the demurrer to this replication.

The judgment of the circuit court will be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*