W. T. CRAIG et al.

v.

THE PEOPLE ex rel. William Welsh et al.

*Opinion filed December 20, 1900.*

1. DRAINAGE—*what is not essential to validity of petition for combined drainage.* It is not necessary to the validity of a petition for combined drainage under section 11 of the act of 1885, (Laws of 1885, p. 80,) that it should contain the description of the different tracts of land severally belonging to the petitioners, or that in stating the names of owners of lands in the district the description of the land owned by each should be given.

2. SAME—*statute provides the mode of determining whether petition is properly signed.* Whether petitioners are the owners of the major portion of the land in the proposed district, and constitute one-third or more of all persons owning land therein, are prerequisites to be determined *prima facie* by the drainage commissioners at their meeting held under section 13 of the act of 1885, (Laws of 1885, p. 81,) and conclusively determined by them at the subsequent meeting held under section 15 of the act.

3. SAME—*effect of amendment creating office of clerk of drainage board.* The Drainage act of 1897, (Laws of 1897, p. 207,) which provides that the drainage commissioners shall select one of their number to act as clerk of the board in the place of the town clerk, who was created clerk of the drainage board by section 2 of the act of 1885, does not affect the power and duty of the town clerk to give notice of the filing of a petition for combined drainage, as is provided in section 12 of the act of 1885.

APPEAL from the Circuit Court of Clark county; the Hon. H. VANSELLAR, Judge, presiding.

JAMES W. & EDWARD C. CRAIG, (J. W. GRAHAM, of counsel,) for appellants.

GOLDEN, SCHOFIELD & BOOTH, for appellees.

Mr. CHIEF JUSTICE BOGGS delivered the opinion of the court:

This was an information in the nature of *quo warranto* to test the validity of the organization of Drainage District No. 1 of the town of York, in the county of Clark. The court overruled a general demurrer to the informa-

tion and required the appellants to plead thereto. A plea setting out in detail the steps taken to perfect the organization of the district under the provisions of an act entitled "An act to provide for drainage for agricultural and sanitary purposes," etc., approved June 27, 1885, (Hurd's Stat. 1899, p. 687,) and the act amendatory thereof, approved June 10, 1897, (Hurd's Stat. 1899, p. 720,) was held, on the presentation of a demurrer thereto, insufficient to show the district had been legally organized.

The purpose of the organization of the proposed district was to secure a system of combined drainage, and the petition therefor was under section 11 of chapter 42 of the said act, (Hurd's Stat. 1899, par. 85, p. 689,) as being the petition of the owners of a major part of the land in the proposed district and of one-third or more of the owners of the land in the district.

It was asserted in behalf of the demurrer that it appeared from the face of the petition set forth in the plea, that such petition did not bear the signatures of the owners of a major part of the lands in the district, and that therefore the commissioners of highways of said town of York, being, under the provisions of section 1 of the said act, *ex officio* drainage commissioners, were without jurisdiction to take any steps in the matter of the organization of the alleged drainage district.

The concluding sentence of said section 11 of said act provides that the petition shall state the names and post-office addresses, so far as known, of the owners of the several tracts of land embraced within the district. In the body of the petition here involved it is stated that annexed thereto, as a part of the petition, is a list or schedule showing the names and post-office addresses of said owners. Appended to the petition was a list setting forth the names and post-office addresses, so far as known, of all owners of the land to be embraced within the district. It is objected that this list or schedule can not be considered as a part of the petition, but no rea-

188—27

son is advanced for that view, and we think none exists to be suggested. It was recited in the petition that the signers thereto were the owners of the major part of the land in the proposed district, and in point of numbers constituted one-third or more of the persons owning land in the district. It appeared from the plea the petition was accompanied by the affidavit of two credible signers of the petition, stating, to quote therefrom, that "they have examined said petition and are acquainted with the locality of the district proposed, and that they believe that said petition is signed by the owners of the major part of the lands and who constitute one-third or more of the owners of the land in the proposed district," as in compliance with the provisions of section 13 of the act. (Hurd's Stat. 1899, chap. 42, par. 87.) The body of the petition contained a description of the governmental sub-divisions of land proposed to be included in the district. Opposite the signature of each petitioner was written the description, by governmental subdivisions, of tracts of land as being the tracts owned by the petitioners, respectively, and in preparing the schedule or list of the names of the persons owning lands in the proposed district it was attempted to set opposite the names of such owners a correct description of the lands owned by each of said owners. The objection that the petition did not bear the names of the owners of a major part of the land in the proposed district is based upon certain discrepancies or errors in description of the tracts of land set opposite the names of the petitioners aforesaid and those set opposite the names of persons given in the schedule as owners of the lands in the proposed district. It is asserted the description of the same tract of land is set opposite the names of each of two of the petitioners, and that if excluded from either owner will so reduce the acreage owned by the petitioners that the total of such ownership, will not constitute a major part of the lands of the district, and further asserted that it appears in the body of

the petition that the west half of the north-west quarter of section 10 is embraced in the territory of the district, but that said tract is not mentioned in the list or schedule of persons owning the lands of the district.

It is not necessary to the validity of the petition it should contain the description of the different tracts of land severally belonging to the petitioners, or that in giving the names and post-office addresses of the persons who are owners of the lands in the district the description of the lands so owned by such persons should be given. In this respect these descriptions in the petition (the schedule included) of the lands of petitioners and other owners are mere surplusage. The statute provides the mode and manner of determining whether the petitioners are the owners of a major portion of the land in the proposed district and constitute one-third or more of all the persons who own lands in the district. Those prerequisites are to be determined *prima facie* by the drainage commissioners at the meeting to be held in accordance with the provisions of section 13 of said act, (Hurd's Stat. 1899, p. 689, par. 87,) and conclusively determined by the commissioners at the subsequent meeting of the board provided to be held by section 15 of the act. (Ibid. par. 89.) It appeared from the plea the drainage commissioners held the first of these meetings on the 21st day of January, 1899, and that the "drainage record," or record of the proceedings of the board required to be kept by section 2 of the act, (par. 76,) contained the following proceedings at that meeting: "And said commissioners having decided to hold a meeting to consider said petition on the 21st day of January, 1899, at the Block school house in York township, and due notice having been given of the filing of said petition and of the time and place of the meeting of said commissioners according to the statute in such cases made and provided, and the said commissioners having met at the time and place aforesaid, and having examined said petition and all

other papers in the case that were laid before them by the clerk, and having examined all witnesses produced, do find that the said petition contains the signatures of the owners of the major part of the land who constitute one-third or more of the owners of the land situated in the said district, and do find in favor of said petitioners." The said finding was duly signed by the commissioners. It further appeared from said drainage record, as recited in said plea, that said commissioners ordered that the adjourned or second meeting of the board should be held on the 4th day of February, 1899, and that at the meeting so held on said 4th day of February another adjourned meeting was fixed for the 18th day of February. The record of the proceedings of the commissioners on said 4th day of February, set out in the plea, contains, among other things, the following: "The commissioners heard additional evidence of witnesses in reference to the said drainage district, and again found that the petition for the organization of the said district was signed by the owners of the major part of the land, and who constitute one-third or more of the owners of land in the proposed district." It also appeared from the said plea that the said drainage record contained the following record of the proceedings of said commissioners on the 18th day of February, as to the point in question, viz.: "And said commissioners having met at the time and place last aforesaid, pursuant to said adjournment, for the purpose of making the necessary examinations and findings, do find that the petition for the organization of the said district is signed by the owners of the major part of the land and who constitute one-third or more of the owners of the land in the proposed district."

Section 15 of the said act (par. 89) declares the final finding of the board of commissioners shall be conclusive as to the question whether the petition bears the requisite number of qualified petitioners. We need not consider the insistence of appellees that the statute should not be

construed to invest the drainage commissioners with absolute power to conclusively determine a question which lies at the foundation of the jurisdiction and power of the board to act at all in the premises, and that, notwithstanding the express declaration of the statute that the finding of the board shall be conclusive, the court should regard such finding as *prima facie* merely, for the reason that if that contention be conceded and the findings in this case regarded as but *prima facie*, such *prima facie* finding is, in our opinion, undisturbed by the attack made upon it by the contention of the appellees with reference to the errors and discrepancies, omissions and possibly misdescriptions of governmental subdivisions of land unnecessarily inserted in the petition and appearing here as mere surplusage. Those alleged supposed errors, uncertainties, misdescriptions or omissions may have been, and it is to be presumed were, discovered and explained in the preliminary and final hearings before the board, aside from the statutory declaration. There is no reason those repeated findings of the board as to the legality of the petition should not be accepted as the truth of the matter.

There is no force in the objection that it does not appear from the plea that the time fixed for the first or preliminary meeting of the said drainage commissioners was not fixed and determined upon by the commissioners. The plea avers that the time and place of the meeting were "decided on by the commissioners." It is only necessary that that averment be sustained on the hearing by competent proof. The information filed by the appellees purports to contain true copies of the petition and of the record of the "Drainage District" as to all proceedings taken and had by the commissioners under the petition. Among other of the records of the proceedings of the said commissioners so set out in the information, is a copy of the proceedings and findings of the board at its January meeting, 1899. These findings recite the presentation of the petition to the commissioners, and that

said commissioners decided to hold a meeting to consider the same on the 21st day of January, 1899. The information, therefore, contains the proof necessary to support the averments of the plea.

It appeared from the plea that the notices given that the commissioners would hold the first of their meetings at the time and place as had been decided upon by them, were signed by "Clarence Nichols, town clerk," and were posted by said Nichols in his official capacity as town clerk. It is insisted said town clerk had no authority to give, sign or post such notices, and that, for that reason, the meeting of the commissioners held in pursuance of such notices was without authority of law and void. Section 2 of the said act approved June 27, 1885, (Hurd's Stat. 1899, p. 687,) which constitutes the town clerk the clerk of the drainage commissioners, was amended by the act approved June 10, 1897, (Hurd's Stat. 1899, p. 721, par. 202,) which latter act provides that the drainage commissioners shall select one of their own number to act as clerk and keep the records of the board, etc. Section 12 of the said act of 1885 expressly provides it shall be the duty of the town clerk to give the notices in question, and the power and duty of the town clerk in this respect are in no way affected by the said act amending said section 2. The duties of the clerk of the drainage commissioners, appointed by virtue of said amendatory act, do not extend to the duties required to be performed by the town clerk by sections 11 and 12 of the original act of 1885, before the organization of the district is effected.

The information set out with more particularity than the plea, copies of all that appeared on the drainage record of said commissioners, and based the right to the writ upon the same supposed insufficiencies in the record of such proceedings as were afterwards urged against the sufficiency of the plea setting up the same record and proceedings taken by the commissioners. We have found the plea to be good. It follows, in our opinion, the court erred

in sustaining the demurrer to the plea and also in overruling the demurrer to the information. The demurrer to the plea should have been carried back as a demurrer to the information and sustained as against that pleading.

The judgment of ouster is reversed and the cause remanded, with directions to the circuit court to overrule the demurrer to the plea and sustain the demurrer to the information.                *Reversed and remanded.*