THE DOVER LUMBER COMPANY v. BOARD OF COMMISSIONERS OF MOSELEY CREEK DRAINAGE DISTRICT ET ALS.

(Filed 14 March, 1917.)

1. **Drainage Districts—Assessments—Summons—Parties—Injunction — Statutes—Mortgages.**

   The provision of our drainage law that summons be served on defendant landowners within a proposed drainage district is mandatory, and when it appears that one of them, having an interest within the meaning of the statute, has not been served, and it does not appear that he was an apparent party, an order laying an assessment on his property is void, and the proceedings as they relate to him are a nullity, and the assessment may be restrained. *Banks v. Lane,* 170 N. C., 14, holding a mortgagee not a necessary party, cited and distinguished.

2. **Drainage District—Timber Deeds—Assessments—Standing Timber—Personalty.**

   With regard to our drainage statutes, a conveyance of the timber, under the usual deed, providing for its cutting and removal from the land within a stated period, is regarded as a severance thereof from the land, and the grantee in the deed is not liable for an assessment for drainage purposes laid thereon; though theretofore, and for the purposes of the conveyance, it is regarded as realty, while standing.

CLARK, C. J., concurring in part; ALLEN, J., concurring.

ACTION to enjoin an annual assessment of $1,992.50 each year for five years made against plaintiff's timber by defendants. The cause was heard by *Lyon, J.,* at November Term, 1916, of CRAVEN, upon an agreed state of facts. His Honor held that the assessment was valid and came within the terms of the drainage laws, and dissolved the injunction. Plaintiff appealed.

*D. L. Ward, Moore & Dunn for plaintiff.*
*Guion & Guion for defendants.*

BROWN, J. The case agreed substantially sets forth these facts: The Dover Lumber Company, a corporation, owned certain rights to cut standing timber upon the lands of the West estate, situated within the Moseley Creek Drainage District. The timber was conveyed to plaintiff, with the privilege of removing it within a stipulated period, prior to the formation of the drainage district.

When the district was formed the plaintiff was not made a party nor served with summons, neither was the particular timber or the plaintiff referred to anywhere in the proceedings. No summons was issued against the plaintiff, and there was no apparent service upon it.

The owner of the land known as the West estate was a party and an assessment was levied against the land. The grounds upon which plaintiff asks injunctive relief are: (1) That plaintiff has had no notice of and is no party to the drainage proceeding; (2) that standing timber, the title to which has been severed from the land by conveyance, is not the subject of assessment under statute. It is contended that injunction is not the proper remedy.

The plaintiff was not only not served with summons or other notice in the drainage proceedings, but was not an apparent party. The judgment was, therefore, absolutely void as to it, and could be attacked collaterally. Had plaintiff been an apparent party and had there been apparent service on it, then the remedy would be by motion in the cause. Where it appears on the face of a legal proceeding that a party against whom execution is issued has not been made a party, and that there has been no service of summons, the judgment is void as to him and its enforcement will be restrained. *Bowman v. Ward,* 152 N. C., 602.

Our drainage statute is mandatory in requiring a "summons to be served on all the defendant landowners who have not joined in the petition and whose lands are included in the proposed drainage district." The drainage laws of North Carolina have been largely copied from the acts in Indiana and Illinois, and following the construction

of these acts in these and other States for the long period of time the acts have been in force, it is essential that notice of summons in all such proceedings be given to all parties who will be affected thereby. *Sites v. Miller,* 120 Ind., 19, citing numerous authorities; *Kinney v. Ball,* 68 Mich., 625; *Curram v. Sidney Co.,* 47 Minn., 313; *Baltimore, etc., R. R. v. Wagner,* 43 Ohio State, 75. In those States it is held that where the mandate of the statute is that notice shall be given in the manner and for the time therein prescribed, before the time fixed for the hearing of the petition, failure to give this notice as required will render invalid any assessment against a person who is not so notified. *Yolo Co. Reclamation District v. Burger,* 122 Cal., 442; *Craig v. People,* 188 Ill., 416; *McMullen v. State,* 105 Ind., 334.

In the Supreme Court of the United States it has been held in the enforcement of a drainage assessment, the question of due process of law does arise where the defense goes to the validity of the service. *Hager v. Reclamation District,* 111 U. S., 701.

The case of *Banks v. Lane,* 170 N. C., 14, differs materially from this. In that case it was held that where the landowner had been made a party and the land duly assessed, a mortgagee need not be made a party, as the proceeding is one *in rem,* and the draining of the land inured to his benefit as well as to that of the mortgagor; hence the mortgagee could not restrain the collection of the assessment.

Upon rehearing, 171 N. C., 505, there were two concurring opinions, with one justice dissenting *in toto. Mr. Justice Walker* concurred in the decision that the remedy was by motion in the original proceedings, upon the ground that it did not appear affirmatively on the face of the Craven judgment that there was no service of the summons. The writer concurred upon the same ground, and further, that it did appear that the lands belonging to Mrs. Spivey were set out and embraced in the drainage proceedings and were duly assessed in her name as one of the landowners within the drainage district.

One of the essentials of a proceeding *in rem* is that the property sought to be charged shall be identified by description in the proceedings. Nothing of the sort appears in this drainage proceeding. The owner of the timber lease had no right to assume that his timber would be separately assessed because the owner of the land upon which it grew had been made a party. The assessment of the timber lease appears to have been an afterthought of the viewers, and does not appear to have been contemplated when the proceeding was first initiated.

The second position of plaintiff is that a timber lease does not come within the letter or spirit of the statute and is not assessable for

drainage purposes. It appears to us that that proposition is undoubtedly correct.

When standing timber is severed by conveyance from the land, with the right to cut and remove within given period all timber of a certain size, it is no longer a part of the land. The owner of the timber is not a freeholder or landowner from the mere fact of owning a timber lease. It is true, we have held that timber is to be considered as land for purposes of conveyancing, but it does not follow the land after it has been so conveyed and is no longer a part and parcel of it.

The statute provides for issuing drainage bonds to be paid in annual installments by assessments on the lands. These assessments "shall constitute the first and paramount lien, second only to county and State taxes."

If the standing timber is assessable separate from the land, and if the assessment is a lien on the timber, the owner of the bond can restrain the cutting of the timber until the bonds are paid, and if the term for cutting is less than ten years, the owner of the timber would lose all of it, as he could not cut within the ten years and the timber not cut within that time would belong to the owner of the land.

The statute requires only *landowners* to be made parties in such drainage proceedings, and that the proceeding shall be initiated only by a majority of the *"resident landowners."* It provides that for purposes of assessment the lands shall be divided into five classes, and that "the degree of wetness of the lands, its proximity to the ditch or a natural outlet, and the fertility of the soil shall be considered in determining the amount of benefit it will receive by the construction of the ditch." It is useless to quote further from the act. It is sufficient to say that its entire context plainly indicates that timber leases, such as the one held by plaintiff, do not come within its purview, and that its purpose is to facilitate the drainage of lands for agriculture.

It was well known to the General Assembly that much of the standing timber upon the lands of this State has been sold, with the right to cut and remove it limited, as in this case, to a few years. Had it been intended by the statute to embrace such leases within its terms, the Legislature would have said so and doubtless have provided a method of assessment measured by the benefit, if any, accruing to the timber exclusively during the actual existence of the lease, and not, as in this case, amounting to practical confiscation.

The judgment is reversed and the cause remanded to the Superior Court of Craven County with direction to enter judgment for plaintiff in accordance with this opinion.

Reversed.

CLARK, C. J., concurs on the first ground, that the plaintiff, owner of the timber interest in the land, was not made a party in the drainage proceeding and has had no day in court. In *Banks v. Lane,* 170 N. C., 14; *s. c.,* 171 N. C., 505, the landowner had been made a party, and was duly assessed. The Court held that such proceeding was *in rem* and that the notice to the owner was sufficient, for the mortgage was only an encumbrance, and it was also to be presumed that the mortgagee was benefited by the enhancement of the value of the land, which was security for the debt.

I dissent, however, as to the second point, which, besides, is merely an *obiter dictum,* since the proposition cannot arise after holding that the plaintiff has not been made a party and that the whole proceeding was void as to it. If the plaintiff had been made a party, of course, it would be bound by any judgment or assessment from which it did not appeal. Moreover, the conveyance of the timber right has been often held by this Court to be a conveyance of the realty. *Timber Co. v. Wells,* 171 N. C., 264, and cases cited. If the timber had not been conveyed at the time of the judgment in this drainage proceeding, the land with the timber on it would have been assessed its due share for the payment of the bonds and the expenses of the proceeding. The owner, having parted with the valuable timber interests, would not be assessed for the same valuation on the land as he would have been before such conveyance. If the valuation assessed against his land was reduced by the value of the conveyance of the timber, of course, the owner of such timber right would be assessed for the value of such timber as was standing and uncut at the time the assessment and valuation were made. It is true, the conveyance may be called a lease, but it is not a lease in the ordinary sense of a lease of a house or farm, which takes nothing from the value of the realty, but it is a conveyance of an interest for years in the land. Till the timber is cut the land cannot be used for any other purpose, and the gradual cutting of the timber will impair the value of the tract.

Whatever the value of this conveyance for years is at any given time, it is liable for taxation, Revisal, 5225; Laws 1915, ch. 286, sec. 32, which provide that when any "mineral, quarry, or timber right" is owned by other than the owner of the fee, such right shall be listed and taxed in the name of its owner, such right and the fee being assessed separately. Of course, therefore, it is liable for an assessment of its value in forming a drainage district. There are thousands of acres of timber held by lumber companies which are very valuable, and to hold that such timber rights are not liable to taxation, or for an assessment in the drainage district which may embrace them, would be to exempt a very

great property, many millions of dollars, from liability either to taxation or assessment for any local purpose. If liable to taxation as realty, they must be equally subject to local assessments.

In laying a local assessment, whether it is for paving or for fencing or for a drainage district or other purpose, the question is not whether the particular property is benefited, but what is its valuation. There is some modification under the terms of the statute in proceedings for drainage, having regard to the benefit to each tract; but when the tract is assessed and the timber interest is sold off, whether before or after the assessment, such timber interest should be assessed in the proportion that the timber right bears to the value of the whole tract.

ALLEN, J., concurring: Standing timber is real property for the purpose of devolution and transfer, but the owner of the timber does not own the soil. He has merely the right to the support of the soil for his timber during his term, and has no right to cut ditches at pleasure, and if so, it would not seem that he could impose this burden on the owner of the soil.

Nor are assessments based on a valuation of the property, as taxes are, but on the amount of benefit to the property assessed. "The foundation of the right to levy assessments is the particular benefit received by the land assessed," and "There can be no assessment in excess of the benefit received" or "where there is no benefit." 9 R. C. L., 953. "The benefit must be certain." 9 R. C. L., 954.

The last principle seems to have been violated by the assessors, as it is not within the bounds of probability that the gum timber of the plaintiff could be benefited by the proposed drainage in the amount of $9,962.50, the assessment laid on the plaintiff's timber, during five years, to which time its right to cut is limited.

A brief summary of parts of the drainage act also demonstrates, I think, that the assessment of timber was not within the contemplation of the General Assembly.

Section 1: The drainage districts are formed "for the purpose of draining and reclaiming wet, swamp, or overflowed lands."

This shows that the main purpose of the act is agricultural. The owner of the timber has no wet, swamp, or overflowed lands to be drained or reclaimed. He owns nothing except the timber.

Section 2: The petition for the establishment of a district may be filed by a majority of the resident landowners, or by the owners of three-fifths of the land.

Suppose four nonresidents own all the land in the proposed district, and they sell different parts of the timber to five nonresidents. Could these five file a petition against the will of those who own the soil, or

could they by refusing to join in the petition prevent the other four, who own the soil, from the possibility of establishing a district. If they are landowners within the meaning of the statute, they have this right.

Section 12: In making assessments the appraisers must consider "degree of wetness" of land, "its proximity to the ditch," and "the fertility of the soil," "in determining the amount of benefit *it* will receive by the construction of the ditch."

"It" evidently refers to "soil."

Section 19: The three drainage commissioners are to be appointed from those receiving the vote of a majority of the owners of land.

If there are four owners of the soil and five owners of timber, can the five elect the commissioners? They can if they are owners of land within the meaning of the statute.

Section 31: The assessments are against "the several tracts of land." Is a timber holding ever referred to as a tract of land?

The amount shall be assessed against "the several tracts of land" according to "the benefit received."

Does gum timber receive any appreciable benefit within five years?

Section 32: Provides for bond issue for construction of the improvement.

Section 34: These bonds are to be paid in ten annual installments out of the assessments, which "shall constitute the first and paramount lien, second only to county and State taxes."

If the standing timber is assessable separate from the land, and if the assessment is a lien on the timber, the owner of the bonds can restrain the cutting of the timber until the bonds are paid, and if the term for cutting is less than ten years, as in this case, the owner of the timber would lose all of it, as he could not cut within the ten years because to permit him to do so would decrease the security of the bondholder and the timber not cut within that time would belong to the owner of the soil.

Section 37: This act is "to promote the leveeing, ditching, draining, and reclamation of wet and overflowed lands." The owner of the timber has no "wet and overflowed lands."

It is urged, however, that if this construction prevails, it will enable the owner of the land to sell his timber, thereby depreciating the value of his land, and that this will have the effect of decreasing his assessment and of increasing the assessment of his neighbor; but this position is upon the erroneous idea that the assessments are based on values and not benefits.

I think no instance can be found of the establishment of a drainage district except for the purpose of reclaiming lands for cultivation, and

as the timber must be cut and removed before the proposed improvement is complete, the sale of the timber ,with a limited time for its removal would rather increase the value of the land than decrase it for the purpose of the act, which is for cultivation.